JOHN H. PEEBLES v. COMMISSIONERS OF DAVIE COUNTY.

*Elections—Powers of Canvassers.*

1. A board of county canvassers under the election law (acts 1877, ch. 275) has no authority to revise the registry or to examine into the quali- fications of those who voted or who were refused permission to vote.

2. They must decide upon the authenticity and regularity of the returns; but when received the returns must be counted as importing absolute verity, as far as the county canvassers are concerned.

3. Their *quasi* judicial functions do not extend beyond an enquiry into and a determination of the regularity and sufficiency of the returns themselves.

(*Moore* v. *Jones*, 76 N. C., 182; *Swain* v. *McRae*, 80 N. C., 111, cited and approved.)

APPEAL from an order of Injunction made at Fall Term, 1879, of DAVIE Superior Court, by *Gilmer, J.*

The injunction granted was continued to the hearing, and the defendants appealed. The facts of the case are substan- tially set out in the opinion.

*Messrs. Watson & Glenn* and *J. M. McCorkle,* for plaintiff.
*Mr. J. M. Clement,* for defendants.

SMITH, C. J. The cause is before us on the appeal of the defendants from an interlocutory order of injunction, to continue in force until the hearing, restraining them from

subscribing in the name of their county to the capital stock of the Winston, Salem and Mooresville railroad company and issuing bonds in payment therefor. The action is brought by the plaintiff on behalf of himself and other residents and tax payers in Davie county, and he insists that a majority of the qualified voters of the county have not voted for and authorized the proposed subscription as required by the act of March 5, 1879. In the case agreed the following are the material facts:

A new registration of electors was ordered and taken in the different townships of the county just prior to the election in August last, preparatory to obtaining an expression of their will on the proposition of a county subscription of $35,000 to the capital stock of said railroad, and an election for that purpose was held on the 7th day of August, 1879. There were enrolled on the registrars' books the names of 1,953 persons as entitled to vote; of this number on the day of the election and just before, in Callahan township, were entered the names of seventeen persons who in age and residence were competent electors, but failed to take the oath prescribed by law. The name of one of these was transferred by the registrar from the old to the new registry without authority from the voter and nine directed him to make the transfer of their names. Of the nine thus registered one voted for and four voted against the subscription, and the others did not vote. The remaining seven, upon their own direct application, were registered, and of these, five voted against, one registered on the day of election voted for the subscription, and one did not vote. These seventeen names were stricken from the list of voters by the county canvassing board when met to canvass the returns, after enquiry and proof of the facts stated, upon the ground of their incompetency to vote on such registration.

The whole number of votes cast, as shown by the returns, was 1,953, reduced by the action of the board to 1,936, of

which 972 were in favor of subscription, being a majority of four votes. If the two rejected votes for subscription are added to this majority, and any six of the other fifteen are counted, the result is reversed; and even upon the construction of the statute that a majority of those voting is sufficient, as contended for the defendants, the subscription fails to obtain the popular approval.

The point thus presented then is this: Have the county canvassers the authority, in discharging their official duties, to go behind the registry of voters and to examine into the regularity of the action of the registrars, and their associate judges of election, to strike from the roll the names of all such as they may deem to be improperly entered, and to change the voting lists accordingly? The power, it must be conceded, is susceptible of great abuse, and its exercise in the present case neutralizes the force of the popular will, as expressed at the ballot box in the form regulated by law. The proposition which asserts that this power resides in such a body is so fundamentally at variance with the practical workings of our electoral system, and the well understood functions of the public agents charged with collecting and reporting the popular vote from the different precincts, that its bare statement would seem to be its refutation. This will be fully manifest from an examination of the provisions of the law regulating elections Act 1877, ch. 275.

The registrars are required to revise the registration books so that they shall show an accurate list of electors previously registered, and still residing in their precincts or townships, without requiring the electors to be registered anew, and then for thirty days before an election to keep the books open for the registration of such as are entitled to vote, and whose names have not been previously registered; and instead of this, the board of justices may order an entire new registration. § 6.

On the Saturday before the election, the registrar with the four appointed judges of election must attend at the place of election with his books open for inspection and challenge of any whose names have been entered. If any voter is challenged, a day and place are appointed for the trial of the challenge and the determination of the question of his legal qualifications, and if found incompetent, his name is erased. § 8.

On the day of election any elector may, and it is the duty of the judges to, challenge the vote of any person " who may be known or suspected not to be a duly qualified voter." § 14. Such are the safeguards thrown around the ballot box to preserve the elective franchise and protect it from illegal and fraudulent invasion. Obviously the whole duty of preparing the registration lists and rectifying errors, devolves exclusively upon these officers, and a supervising power over them and the other public agents conducting the election is not conferred upon that body, constituted of representatives from the several voting precincts, whose duty is to ascertain and declare the general result. The county canvassers are directed " to open and canvass the returns, and make abstracts, stating the number of ballots cast in each precinct for each office, the name of each person voted for, and the number of votes given to each person for each different office " and " sign the same." § 25.

No authority is given to the board to revise the registry, nor to examine into the qualifications of those who have been allowed to vote, and whose names are on the returns, with a view to the erasure of such as are found to be incompetent, any more than to enquire who offered to vote and were wrongfully refused, and for whom such person would have voted, in order to restore their names to the voting lists. The prosecution of such an enquiry is foreign to the purposes of their organization and would lead to embarrassments and delays seriously obstructing the execution of the

election laws, and evidently not necessary in the perform-
ance of their duties, nor contemplated by the act creating
the board.

To canvass, as defined by Worcester, " to sift, to examine,
to scrutinize " *the returns*, not the qualifications of the elec-
tors whose names appear therein, is the duty enjoined, and
more specifically set out in the words that follow. They
may and must determine the authenticity and regularity of
the returns themselves; but when received, they must be
counted as importing absolute verity, as far as the county
canvassers are concerned, in determining the aggregate vote
and its result. This we think fairly deducible as the true
doctrine as to the functions of the county board, from the
decisions in this and other states. *Moore* v. *Jones,* 76 N. C.,
182; *Swain* v. *McRae,* 80 N. C., 111; Brightly Elections, 300,
306, 434; McCrary Elections, § 84, and numerous cases cited
by both authors.

While in *Swain* v. *McRae, supra,* attention was called, in
the opinion, to the difference of phraseology in the act pre-
scribing the duties of county canvassers, from that defining
the duties of county commissioners, their predecessors,
under which the decision in *Moore* v. *Jones, supra,* was made,
as indicating an intent to enlarge the powers of the former, it
was not intended to suggest that these *quasi* judicial functions
extended beyond an enquiry into, and determination of, the
regularity and sufficiency of the returns themselves, or that
the canvassing board could look into the personal compe-
tency of voters, and add to or diminish the number certified
in counting them up. We are clearly of opinion this power
is not conferred, nor was intended to be conferred by the
statute, and that the defendants acted entirely *extra vires* in
attempting to reform the registry and change the result of
the returned vote. This may be done by a legislative body,
to whom a member with a regular certificate of election is
accredited, or by a proper proceeding instituted under C. C.

P., Title 15, ch. 2, but not by a canvassing board created under the statute.

It appears that a majority of those who voted did not vote in favor of the subscription, and it becomes unnecessary to pass upon the question, so elaborately debated, as to the legal effect of section two of the act, which requires the assent " of a majority of all the voters entitled to vote therein " to-wit, the county of Davie.

We have heretofore at the present term said that we do not intend, upon an appeal from the granting or refusing a temporary order, ancillary to the main relief sought, to pass upon the merits of the controversy, unless it was necessary 'in deciding upon such order. In the present case that necessity is forced and our opinion may dispose of the case.

There is no error in the ruling of the court. This will be certified to the end that further proceedings be had in the court below.

No error.                                        Affirmed.