THE STATE on the relation of W. J. GATLING v. THOMAS D. BOONE.

*Elections—County Canvassers—Jurisdiction—Office.*

1. The power conferred upon Boards of County Canvassers of Elections, by *The Code*, §2694, is confined to an examination and determination of the regularity and authenticity of the returns, and does not extend to inquiries into any facts which it may be claimed made the election invalid, as fraud, intimidation, &c.

2. The declaration of the result of an election by the Board of Canvassers establishes a *prima facie* right in favor of the persons thereby ascertained to be elected, and is conclusive only of the right to be inducted into the office, but it does not exclude the jurisdiction of the proper Courts to examine and determine the correctness and sufficiency of the returns and the true results of the election.

3. The Supreme Court will not direct a final judgment until all the material issues of fact are settled, either by verdict or admissions of record.

(*Peebles* v. *Commissioners*, 82 N. C., 385; *Moore* v. *Jones*, 76 N. C., 182, and *Swain* v. *McRae*, 80 N. C., 111, cited).

This is a CIVIL ACTION, which was tried before *Avery, Judge*, at Spring Term, 1887, of HERTFORD Superior Court.

The relator alleges that he received a majority of the votes cast for clerk of the Superior Court of the county of Hertford at the regular election held in the year 1886, and was then lawfully elected to that office for the term thereof then next ensuing; that, nevertheless, the Board of County Canvassers of the votes so cast unlawfully rejected and refused to count the votes cast for the relator for such clerk at two voting places in that county at the said election, and falsely pretended to ascertain and determine that the defendant received a majority of the votes cast for such clerk at said election, when, in fact and in truth, he did not; and in pursuance of such ascertainment the County Commissioners of that county, on the 6th day of December, 1886, permitted him to give bond and qualify as such clerk and take possession of the office in that respect, and on that day and ever next thereafter he has held and exercised the said office and received the emoluments thereof to his own use.

The relator demands judgment that the defendant was not elected to be, and is not such, clerk, and that he was duly elected as he alleges, and is entitled, &c.

The defendant denies the material allegations of the complaint, and pleads:

"That the Board of Canvassers are invested with judicial power to open, canvass and declare the result of all elections, and that in the exercise of that judicial power the Board of Canvassers mentioned in the complaint opened and counted all the votes cast in said election, except certain votes purporting to be the votes cast at St. John's and Winton precincts, and excluded these because the election held at said two precincts was null and void, and that the returns from those precincts were invalid and void.

"That the questions presented in the complaint have already been tried and determined by the said Board of County Canvassers and are *res adjudicata*, and that the Superior Court has no jurisdiction of this action."

The Court gave judgment, whereof the following is a copy:

"This cause coming on to be heard and it appearing that the questions presented have already been adjudicated by the Board of County Canvassers on the 4th of November, 1886, and that the same cannot be re-heard in this action, it is adjudged that the defendant go without day and recover his costs."

The relator appealed.

*Messrs. D. A. Barnes* and *B. B. Winborne* (*Mr. W. R. Winborne* filed a brief), for the plaintiff.

*Mr. E. C. Smith* (*Messrs. Blount & Blount* filed a brief), for the defendant

MERRIMON, J., (after stating the case). We are of the opinion that the Court below misapprehended the purpose and scope of the effect of the statute, (*The Code*, §2694,) which provides that "the Board of County Canvassers shall at their said meeting, in the presence of the sheriff and such electors as choose to attend, open and canvass and *judicially determine* the returns, and make abstracts stating the number of legal ballots cast in each precinct for each office, the name of each person voted for, and the number of votes given to each person for each different office, and shall sign the same."

Power is thus conferred to "canvass and judicially determine the returns"—that is, to examine, scrutinize and enquire about them—to ascertain and declare that what purports to be such returns are or are not such, whether they are defective, if at all, and what their meaning is, and from such as are accepted as true and proper ones, what number of votes was cast, for whom they were cast, and the result of the election in the county, as prescribed by the statute. Power, however, is not thus conferred to make, alter or amend returns. The Board must accept and act upon them, if they

are sufficient, as they come from the judges of the election at the voting places. It is the province of this board to ascertain the results of the election in the county from the returns and only from them, and to declare and proclaim that result. *Peebles* v. *Commissioners*, 82 N. C., 385.

It will be seen from what has been said that the duty of the Board of County Commissioners, when assembled, is not simply to "proceed to add the number of votes returned' together, as formerly the Board of County Commissioners were required to do under the statute, (Acts 1871–'72, ch. 185, sec. 19,) but they have authority, judicial in its nature, to examine the returns and decide upon their regularity, correctness and sufficiency, and to accept or reject them as above indicated.

This Court held in *Moore* v. *Jones*, 76 N. C., 182, that the County Commissioners, under the statute just cited, possessed only ministerial authority, and hence could not examine and decide upon the correctness and sufficiency of the returns; that they could only "add the number of votes returned" together. In view of this decision, and to enlarge the powers of the Board of County Canvassers, the Legislature afterwards enacted (Acts 1876–'77, ch. 275, sec. 25,) that they, when assembled as prescribed, should "open and canvass the returns and make abstracts," &c. This provision was considered in *Swain* v. *McRae*, 80 N. C., 111, but the Court expressly declined to decide that it did or did not confer judicial power, and in *Peebles* v. *Commissioners, supra,* subsequently decided, although its meaning is to some extent interpreted, the nature of the power is left in some doubt.

Afterwards the Legislature enacted the statute first above cited, which makes the legislative intent more explicit, and confers upon the Board, in express terms, authority to "open and canvass and *judicially* determine the returns and make abstracts," &c. The authority conferred by this provision

is largely judicial in its nature, and would be so in the absence of the word "judicially" embraced in it, which it seems was inserted to remove and preclude any possible doubt in the minds of Courts as to the nature of the power the Legislature intended to confer.

The use of it was probably suggested by the seeming hesitancy of the Court to define the nature of the power in the cases above referred to. The employment of the term was really unnecessary. It only served the purpose to indicate, in terms, what the Legislature had in legal effect done, if it had been omitted from the statute.

The power in question clearly extends only to the returns. It does not go beyond them and embrace authority of the Board of Canvassers to enquire, ascertain and determine whether or not votes cast at the election were legal or illegal—whether unlawful votes were cast for one candidate and against another—whether lawful votes were rejected, and like questions arising at the polls. The terms of the statute embrace only "returns," and the nature of the authority conferred does not embrace such further jurisdiction, nor is any method presented, nor are there any means provided, for deciding fairly and justly such questions as those suggested, and the settlement of serious legal controversies to which they would often times give rise, and which would in many instances be very complicated and protracted, requiring much time and legal skill in their solution.

Nor is there any provision made, summary or otherwise, whereby one person, claiming to have received a majority of the votes cast at the election and to have been elected, notwithstanding the face of the returns, can contest the right of a person claiming adversely to him. No such jurisdiction is conferred, and the Board of Canvassers is not adapted to such a purpose. Such rights are frequently of the greatest moment and consequence, not only to the parties claiming, but the people as well; and it cannot be supposed that the

Legislature intended, by remote possible implication, that such right should be finally and conclusively determined by a tribunal charged with special duties composed of persons generally unskilled in the law, and not clothed with means adequate or suited to the administration of public justice. Such jurisdiction and authority cannot arise by remote implication and mere inference. Moreover, the brief time within which the Board of Canvassers must discharge their official duties goes to show that it is not their province to exercise such jurisdictional functions. They are expected to complete their whole service in one or two days. The general statutory provisions and regulations in respect to contesting the right to office likewise clearly indicate that their action in respect to returns is not conclusive upon individuals or the public as to the election, and the whole course of judicial decisions is to the like effect.

The result of the election, as determined by the Board of County Canvassers upon the returns is important, because it conclusively settles *prima facie* the right of the person so ascertained to be elected to have, be inducted into and exercise the office and receive the emoluments thereof to which he was so ascertained to be elected; but this determination has only this limited effect. It is not final and conclusive upon any person interested, nor does it affect the jurisdiction of the proper Court, in a proper action for the purpose, to examine and pass upon the correctness and sufficiency of the returns and to settle and determine the true and lawful result of the election as it affects the right of the parties before the Court.

The sole purpose of the statute is to confer authority to examine and scrutinize the "returns," as already indicated, to the end that the true result of the election, as it appears from the lawful returns so determined to be by the Board, shall be ascertained.

The Board, for this purpose, is clothed with power to decide all questions arising upon the returns—not as a Court possessed of jurisdiction to settle legal rights between contending litigants, but for the purpose specified in the statute.

It is a mistaken notion that such limited exercise of judicial power is conclusive. It only has effect in that way to the extent and for the purpose contemplated by the statute creating it and authorizing its exercise. The registrar and judges of election, within their several voting precincts, exercise judicial power and decide many important questions in respect to the election they hold and the rights of persons claiming the right to vote; but these decisions are not final nor generally are they conclusive. Thus they have authority to decide that a particular person has the right to vote, but this decision in no way affects the jurisdiction of a proper Court, in a proper action, to decide that such person had no right to vote. This is so in respect to the exercise of judicial power, in many respects, by many officers whose duties are mixed in their legal nature. In such matters the decision is not conclusive, nor is it intended to be. The purpose is to leave the matter so decided open, to be contested by any parties interested regularly before the proper Courts when need be. So that the Court erred in holding that the decision of the Board of County Canvassers in question was final and conclusive upon the relator.

Numerous issues of fact, some of them not raised by the pleadings, were submitted to the jury, to which they responded; and the relator contends that, upon the admissions in the answer and the finding of fact, he is entitled now to have judgment upon the whole matter in controversy. We do not think so.

All pleadings should have definiteness and precision, certainly in respect to matters material. The pleadings here are not so. The relator alleges in general terms that he was

elected clerk of the Superior Court. The defendant denies that he received a majority of the lawful votes cast at the election. No issue of fact involving this question directly was submitted to the jury. The facts admitted in the answer, and found, do not settle that question. It was the principal one, and only facts incident to and bearing upon it strongly it must be concluded are settled. The counsel of the relator insisted earnestly before us that he did not offer evidence in respect to the number of votes cast at the election, or at all, because the Court did not consider, much less pass upon, the merits in this respect.

It appears that the Court decided only the single question decided adversely to the relator, and the principal issue raised by the pleadings was not submitted to the jury.

We, therefore, think that the appellant is entitled only to a new trial, and we.so adjudge.

To that end let this opinion be certified to the Superior Court according to law.

Error.