A. M. RIGSBEE v. THE BOARD OF COMMISSIONERS OF THE TOWN OF DURHAM.

*Elections— Voters—Evidence—Jurisdiction—Constitution—Statute—Canvassing Boards.*

1. While the General Assembly may not have the authority to authorize a municipal corporation to impose a tax upon *a majority of the votes cast* at an election, held for the purpose of ascertaining the will of the people, yet, if in fact *a majority of the qualified voters*, as provided by the Constitution, Art. VII., § 7, do vote in favor of the tax, its collection will not be enjoined.

2. It is incumbent upon those who are charged with the duty of holding and ascertaining the results of an election, where a majority of the qualified votes is necessary to authorize the imposition of a tax, to scrutinize the registration books and eliminate from them the names of all persons who do not possess the requisite qualifications.

3. In the exercise of this duty they may act upon their own knowledge, and they may administer oaths and examine witnesses.

4. The result of the election thus declared is *prima facie* evidence of its correctness, and the burden is upon him who asserts the contrary to prove it.

5. In an action to declare an election void, and restrain the imposition of a tax thereunder, upon the ground of fatal irregularities or other defects, the complaint should set forth specifically the facts which it is insisted avoided the election—a general allegation that a majority of the qualified voters did not vote for the proposition is too vague.

6. In an action to declare an election void upon the ground of irregularities, the Courts have jurisdiction, and it is their duty to ascertain and declare the true result ; and if it shall be thus ascertained that a majority of the qualified voters cast their ballots for the proposition submitted, as a general rule the result will be enforced, though there appear to be irregularities in the manner of conducting the election and canvass.

7. The Registration Books are *prima facie* evidence of the number of qualified voters, but without other support it is not sufficient to overcome the evidence of the legal declaration of the persons authorized to hold the election, that a different number was the true one.

This is a CIVIL ACTION, which was tried before *Merrimon*, *J.*, at January Term, 1888, of DURHAM Superior Court.

The plaintiff, a tax payer of the town of Durham, brought this action in behalf of himself and all other tax payers, &c., to contest the validity of the election held under and in pursuance of the statute (Acts 1887, ch. 86,) which, among other things, provides as follows: "Section 1. The Board of Commissioners of the town of Durham shall, and they are hereby authorized, to submit to the qualified voters of the said town, under such rules and regulations, and at such time, within six months of the ratification of this act, as the said Commissioners may prescribe, whether a tax shall be annually levied therein for the support of the schools in said town provided for by this act." At the election held under the provisions of this act, those who favor the levying of such tax shall vote on written or printed ballots, without device, the words: "For school;" and those who are opposed to levying of such tax, shall vote on written or printed ballots, without device, the words: "Against school," &c.  *  *

"Sec. 2. The inspectors of said election shall, on the day following the election, certify the number of votes cast and counted for and against 'school' to the Commissioners of said town, who shall proceed to declare at once the result of the election, and *if a majority of the votes cast* shall be in favor of such tax, the same shall be levied and collected by the town authorities, under the same rules and regulations under which other town taxes are levied and collected," &c.

In the complaint, among other things, it is alleged:

"3. That by section 2 of said act, it is provided that if a majority of the votes cast be in favor of the tax therein provided for, the same shall be levied and collected by the town authorities, under the same rules and regulations under which other town taxes are levied and collected, and plaintiff is advised and believes, and so alleges, that said act is void and unconstitutional on its face, because it provides

that a municipal corporation shall levy a tax, not for the necessary expenses thereof, by a vote of a majority of those voting, and not by a majority of the qualified voters therein, as provided by Art. VII, § 7, of the Constitution of North Carolina.

"4. Notwithstanding it appeared upon the face of the said act that the same was void and unconstitutional, the Commissioners of the town of Durham ordered an election to be held in pursuance of its terms, at which election, as plaintiff is informed and believes, *a majority of the qualified voters of the said town of Durham did not vote* in favor of said tax. Notwithstanding a majority of the qualified voters of the town of Durham did not vote in favor of levying said tax, and establishing the graded school provided for in said act, the defendants, the Commissioners of the town of Durham, acting as Board of Commissioners, by virtue of powers contained in said act, proceeded to appoint a committee, who, after refusing to hear any evidence to the contrary, and also refusing the plaintiff, and others in like case with him, who were present with counsel and demanded it, any opportunity to be heard, and without having any evidence from any source, reported that one hundred and eighty voters, whose names appeared upon the registration books, were not qualified voters of the town of Durham, and that the vote cast in favor of said tax and school was a majority of the qualified voters of the town of Durham, whereupon the said Commissioners proceeded to declare, against the protest of the plaintiff, that the said act had been ratified by a majority of the votes cast, and also by a majority of the qualified voters of the town of Durham, whereas the plaintiff alleges that the registration books showed that there were on the day of said election nine hundred and eighty-three registrations in the town of Durham, and the plaintiff offered to prove to the board, before the result had been declared, that said act had not been ratified by a majority of

the qualified voters; but the said board refused to allow the plaintiff opportunity to do so, and refused to allow him to see a list of the names of the persons whom the committee declared were not qualified voters of the town of Durham; and plaintiff now alleges, upon information and belief, that the said act was not ratified by a majority of the qualified voters of the town of Durham, because the registration books show that there were nine hundred and eighty-three registered in the town of Durham on the day of said election, of whom four hundred and ten voted for the ratification of said act, which is not a majority of said qualified voters.

" 6. That the plaintiff is advised and believes that the said board had no authority to declare that the said act had been ratified by a majority of the qualified voters, for if the act be not entirely void, it only provides that the Commissioners shall declare that it was ratified by a majority of those voting."

The defendants in their answer denied that the statute in question is void; admitted that an election was held in pursuance of the same, and alleged that such election was conducted and the result thereof ascertained and reported fairly and regularly; and that the defendants, the Commissioners of the town of Durham, duly reported that a majority of the votes cast at that election, and a majority of the qualified voters of that town voted at it and voted " For School;" and they denied the irregularities alleged in the complaint, and that the Commissioners named refused to allow the plaintiff or any other person to be present and see the result of the election ascertained, &c.

The report of the Commissioners states, in substance, that at the election named, 410 votes were cast " For School," and 151 votes " Against School," and that there were 800 qualified voters in the town of Durham on the day of the election.

The following is a copy of so much of the case settled on appeal as need be set forth here:

' When the case was called for trial the plaintiff tendered the following as the only issue necessary to be submitted to the jury, to-wit.: Was 410 a majority of the qualified voters of the town of Durham on the 4th day of April, 1887?

" While the plaintiff Rigsbee was being examined as a witness in his own behalf, the Court suggested that his testimony did not seem to be relevant. Whereupon plaintiff's counsel stated that they would prepare other issues, which they did, and tendered the following in addition to the above set forth:

"Did the Board of Commissioners legally and fairly strike out 180 names from the registration books?

" Did the committee, appointed by the Board of Commissioners, base their report on any evidence?

." Did the committee refuse a hearing to the plaintiff?

" Did the Board base their action on anything except the report of the committee?

" Was the said report accompanied by any evidence?

" At the close of the testimony for the plaintiff the Court stated that, as it appeared from the complaint, the proper authorities of the town of Durham had ascertained that 410 votes was a majority of the qualified voters of the town on the 4th day of April, 1887, and had so declared, pursuant to the authority vested in them by the act of the General Assembly under which the election was held, this declaration was to be taken as true until the plaintiff should make the contrary appear by testimony, and that the testimony offered by the plaintiff did not tend to prove that any one of the 180 voters whose names the Board of Commissioners of the town had stricken from the registration books was a qualified voter on the day of election.

"Upon this intimation of the Court that the plaintiff had failed to make any case against the defendants he submitted to

a nonsuit and appealed to the Supreme Court, but before he took this course the Court stated that he might take his choice of a verdict against him or a nonsuit.

" The Court being of the opinion that the plaintiff could not recover unless the first issue should be found in his favor, and that there was no evidence in support of the negative of that issue did not deem it necessary to submit the other issue to the jury. The plaintiff excepted."

On the trial " the plaintiff introduced the registration books of the town of Durham, which were admitted to be genuine.

" The plaintiff then introduced W. H. Proctor, who testified that he was the registrar of the town of Durham, during the years 1886 and 1887, and on the 4th day of April, 1887, (the date of the election in question) there were 981 names on the registration book, but that two of these had been registered twice."

Several other witnesses were examined on the trial for the plaintiff, including himself, but their testimony went to show what was said and done by the Commissioners and others, while the former were engaged in ascertaining the result of the election; there was no evidence of them that went to prove that any person whose name appeared on the registration books as a qualified voter, who was ascertained and decided by the Commissioners not to be such voter, was such in fact.

Messrs. J. B. Batchelor, Jno. Devereux, Jr., and R. C. Strudwick, for the plaintiff

Messrs. Jno. W. Graham and W. W. Fuller, for the defendants.

MERRIMON, J., (after stating the case). The purpose of the legislature in enacting the statute (Acts 1887, Ch. 86,) to allow the town of Durham to have authority to levy an annual tax, as prescribed, for the support of public schools

therein, if a majority of the qualified voters of that town should vote in favor of a proposition to that effect at an election directed to be held, is too apparent to admit of question.

That statute plainly declares the purpose and makes large provision, much in detail, for carrying it into practical effect. It provides that *if a majority of the votes cast* at such election shall be in favor of such tax, it shall be levied. It may be conceded for the present purpose that such a vote could not authorize the levy of such tax, but when, under the statute containing this provision, a majority of *all the qualified voters* of the town vote in favor of it, such vote is sufficient to give the authority. When the legislature declares that a majority of the votes cast at the election shall give the authority, this certainly, in the nature of the matter, includes and implies its willingness and purpose, for the same and like considerations, to give it, if a majority of all the qualified voters of the town shall vote in favor of it. The nature of the statute—its purpose and provisions—all clearly indicate such intent, and we can see nothing in the constitution or sound public policy that forbids or prevents it. The chief and leading purpose is to give the authority to levy the tax if at least a majority of the votes cast shall be in favor of it, and the constitution (Art. VII, § 7,) declares that " a vote of the majority of the qualified voters " of the town shall be necessary to give it. If the statute had omitted, as it might have done, to prescribe the necessary vote, the constitution would have determined it. This interpretation harmonizes the statute with the constitution, and gives effect to the legislative intent. *Wood* v. *Oxford*, 97 N. C., 227.

As the statute was thus operative, the defendants, Commissioners, had authority to hold the election, and it was their duty to ascertain, determine, declare and report whether or not a majority of all the qualified voters of the town voted " For school." They did so, and their action was official and authoritative. The presumption, therefore, is that they ascertained

and reported the result of the election correctly and truly. *Omnia præsumuntur solemniter esse acta.* Their report was evidence, and evidence sufficient to prove *prima facie* what the result of the election was. Hence, the plaintiff having alleged in the complaint that the defendant Commissioners made their report that a majority of the qualified voters of the town voted " For school," the burden was on him to prove the contrary.

It is settled, that the qualified voters of the town were only such persons whose names were registered as such, and that the registration books of voters were evidence *prima facie* of who such voters were, and the number of them. *Southerland* v. *Goldsboro*, 96 N. C., 49; *Duke* v. *Brown*, Ibid., 127; *McDowell* v. *The Construction Company*, Ibid., 514; *Smith* v. *Wilmington*, 98 N. C., 343.

It was the duty of the Commissioners, in ascertaining the result of the election, to have reference to such registration books for the purpose of ascertaining the whole number of registered voters, but it was likewise their duty to scrutinize those books and ascertain what number of persons whose names were registered as voters had, for any cause, ceased to be such. *Duke* v. *Brown, supra.*

How such scrutiny of the registration books shall be made is not prescribed by any statute. In the absence of any prescribed method it must be summary—in some way intelligible. The Commissioners in determining that a person, whose name is registered as a voter, had ceased to be such on or before the day of election, should act with care and caution and not upon mere conjecture. Being sworn officers, they might act upon their own knowledge; if witnesses are examined, they should be sworn; they are not confined to hearing only evidence that would be strictly competent on the trial of an issue before a jury, but the evidence should be pertinent, and such as satisfies them of the existence of the fact as they find it to be. While such scrutiny of the

registration books should be just and as thorough as practicable, as to every voter named in them who is ascertained not to be such in fact, less strictness as to the proof of facts is allowable, because of the imperfect summary method of procedure, the expedition that must be observed, and because the ascertainment of the facts is only evidence *prima facie* of what they really are, including the result of the election. The result of the election, as determined, may be questioned by action, as the plaintiff seeks to do in this case. The Commissioners should carefully note and file with the returns and papers of the election a list of the names of such persons as they determine are not qualified voters, so that fair opportunity may be afforded to contest the declared result of the election.

It is alleged in the complaint, in general terms, that a majority of the qualified voters did not vote " For school " at the election in question, and that the defendants Commissioners improperly declared that one hundred and eighty voters, whose names appeared on the registration books, were not such, and did not count them in ascertaining the whole number of the qualified voters of the town. The defendants likewise allege in the answer that they, by mistake, counted as voters fifteen persons whose names appeared on the registration books, who, as it now appears, were not such. These allegations, in a case like this, are too general and indefinite. The plaintiff should have alleged specifically and particularly the ground of complaint against the validity or sufficiency of the election; if he intended to allege that qualified voters were denied the right to vote, he should have named them and the number of them; if the ground of complaint was that the registration books were not opened for the registration of voters next before the election, this should have been alleged particularly; if he intended to allege that qualified voters were not properly counted in a connection and for a purpose, as they should have

been, the number of such voters and their names should have been specified; and so, also, the defendants should have alleged particularly the names and number of the persons who were and ought not to have been counted as voters. Such precision in the pleadings in this, and like respects, should be observed in order to give the opposing party reasonable notice, to give greater point to and facilitate the trial, and avoid confusion as to the evidence. The Court might *ex mero motu*, or upon application, direct the pleadings to be made thus precise. *Ex parte Dougherty*, 6 Ired., 155.

The pleadings in this case raised directly the material issue: " Did a majority of the qualified voters of the town of Durham vote ' For school ? ' " and, strictly, this issue should have been submitted. It seems, however, to have been assumed, in view of the constituent and evidential facts alleged, that the issue submitted was sufficient to determine the material matter of inquiry, and perhaps it was. The other issues tendered by the plaintiff were immaterial. If the irregularities suggested by them did in fact exist, they could not render void and defeat the election. The question to be settled by this action was not, whether the Commissioners proceeded regularly and properly to ascertain the result of the election, but what was the true result—did a majority of the qualified voters of the town of Durham vote "For school ?" This was the material inquiry to be considered and determined *de novo* by the Court, and finally.

The report of the Commissioners of their action in ascertaining the result of the election, was only evidence on the trial in this action, and sufficient to prove, *prima facie*, that the result of the election was what and as they declared it to be. They could not, by their irregular action, whether done by inadvertence or on purpose, destroy the election or change, conclusively, the just result of it. They had authority to ascertain regularly and truly the result—their ac-

tion, though irregular, was *prima facie* correct, and stood effectual, unless the result, as ascertained by them, should be questioned by action, in which case it was for the Court to determine the result. This does not imply that there may not be irregularities in the conduct of an election that would render it void, nor that the report of the Commissioners of their action might not, in possible cases, be so imperfect as not to be evidence for any purpose.

On the trial, the evidence of the witnesses tended only to prove such irregularities as are suggested by the issues just adverted to, tendered by the plaintiffs in addition to the first one submitted. The Court properly suggested that all this evidence was irrelevant, because it did not tend to prove what was the result of the election in question.

It is alleged in the complaint that the defendant Commissioners ascertained, declared and certified the result of the election. The Court might, therefore, on the trial, accept the fact as true, and the result as ascertained by the Commissioners as *prima facie* correct, and it might have instructed the jury that the fact so appeared.

The result of the election, as ascertained by the Commissioners, thus appearing, the burden was on the plaintiff to prove, by competent evidence, that a majority of the qualified voters of the town did not vote " For school." The only evidence produced by him for that purpose was the registration books of voters. These, as we have seen, were evidence, *prima facie*, of the number of the qualified voters in the town of Durham, on the day of the election, and they, taken in connection with the report of the Commissioners, upon their face showed that a majority of the qualified voters did not vote " For school."

The plaintiff therefore contended that these books were evidence, and sufficient evidence to disprove the result of the election appearing *prima facie* from the result thereof as certified by the Commissioners. The Court thought and sug-

gested otherwise, and we think correctly; because, the ascertainment of the number of qualified voters in the town by the Commissioners was authorized and official, and based upon the registration books corrected and purged for the purpose by the Commissioners of the names of such persons as had on the day of the election ceased, for some cause, to be qualified voters.

It was the official duty of the Commissioners to thus ascertain the whole number of the qualified voters in the town, and hence, their certificate as to the number was better and higher evidence *prima facie* in that respect than the registration books.

The latter were corrected by the Commissioners, and such correction was presumed to be correct; and the registration books alone were not evidence sufficient to rebut or destroy that presumption.

There is therefore no error, and the judgment must be affirmed.

Affirmed.