THE STATE on the relation of W. J. GATLING v. THOS. D. BOONE.

*Election—Evidence—Issues—Verdict*

1. The returns of the poll-holders of an election, to the Board of County Canvassers, are evidence of the result of such election, but they are not conclusive; and if for any reason they cannot be used as such, any other competent evidence is admissible to show what vote was really cast and who was elected.

2. Where immaterial issues are by consent submitted to the jury with others which are material, and it can be seen that the immaterial ones do not affect the proper ones, nor mislead the jury, the verdict will not be set aside, but judgment should be entered upon the finding upon the material issues, though that upon the others is inconsistent.

(SMITH, C. J., dissenting.)

This is a CIVIL ACTION, to try the title to the office of Clerk of the Superior Court of HERTFORD County, tried at the Fall Term, 1888, thereof, before *Montgomery, J.*

The relator alleged that he received a majority of the votes cast for Clerk of the Superior Court of the County of Hertford at the regular election held in the year 1886, and was then lawfully elected to that office for the term thereof then next ensuing.

The defendant denied the material allegations of the complaint and alleged that he was duly elected to be such Clerk and is rightfully in office.

The case was before this Court by a former appeal and a new trial was granted. *Vide Gatling* v. *Boone,* 98 N. C., 573.

At the second trial the parties agreed upon and the Court submitted to the jury issues, which, with the responses thereto, are:

1. Did the relator Gatling receive, at the election in No-

vember, 1886, for Clerk of the Superior Court a greater number of votes than the defendant Boone, and was he elected?

Answer—Yes.

2, Were the returns of the votes for Clerk of Superior Court from St. John's Township properly rejected by the Board of County Canvassers?

Answer—Yes.

3. Were the returns of the votes for Clerk of the Superior Court from Winton Township properly rejected by the Board of County Canvassers?

Answer—Yes.

The relator introduced the returns made by the judges of election and registrar at the precincts of Winton and St. John's, and also offered evidence that these precincts were not counted, but rejected. Evidence was also offered by the relator, tending to show that at St. John's precinct there were 905 registered voters and that at the election of 1886, 321 votes were cast for Gatling and 274 votes for Boone—making Gatling 47 majority; and tending to show that there was a difference of 2 or 3 votes between the votes cast in the county box and the number by the list of voters kept by the judges of election, and in the Legislature box, 55 more votes were cast than appeared on the list.

The relator also offered evidence tending to show that at Winton precinct he received 404 votes and the defendant 112 votes, making the relator's majority 312 votes, and that at said box, one man by mistake voted who was not registered, and that the polls were closed five minutes under the mistaken belief that the sun was down, but were again opened and two persons, the only persons appearing, were permitted to vote and that the poll boxes and books remained during the said five minutes in the presence of and custody of the judges.

It was admitted by both parties that all the votes cast in

the county, for Clerk of Superior Court, were counted, except those of Winton and St. John's, and that Boone's majority was 11.

It was further admitted, that if the votes of either Winton or St. John had been counted, that Gatling would have had the majority, and that to exclude both said precincts, Boone had the majority.

The court instructed the jury that if they believed the evidence to return "yes" to the first issue, and "no" to the second and third issues as their verdict. The jury rendered their verdict—upon which the defendant moved for judgment in his favor, and the court declined to grant it and the defendant excepted.

The relator then moved for judgment upon the verdict in his favor, and the court declined and plaintiff relator excepted.

The court then made the following order :

Verdict set aside, because the findings of the jury are inconsistent, and no judgment can be rendered thereon. From which both the plaintiff and the defendant appealed to this court.

*Mr. B. B. Winborne* for the plaintiff.
*Mr. E. C. Smith* for the defendant.

MERRIMON, J., (after stating the case.) These appeals are separate and distinct from each other, but it is convenient to consider them together, and our opinion will suffice to dispose of both of them.

It was the province and duty of the Board of County Canvassers to receive the returns of the election in question and ascertain from them who received the votes cast thereat for Clerk of the Superior Court, who received the highest number of votes and to declare the result of the election. In doing this they had authority to examine and scrutinize the

returns, to determine whether they were such, whether they were sufficient or otherwise, and from such as were accepted by them as proper ones to ascertain the result as above indicated. But their action as to the sufficiency or insufficiency of the returns in determining the result was not final or conclusive. It simply settled *prima facie* the right of the defendant to be inducted into and to exercise the office of Clerk and to receive the emoluments thereof. This was the whole extent of their authority. The right of the relator or any other person claiming to have been elected Clerk was left open to be litigated without prejudice, in a proper action brought to ascertain and determine the true result of the election without reference to the action of the Board of County Canvassers further than that they settled *prima facie* the right of the defendant. No appeal lay from their decision to the Superior or other court, nor could their action be reviewed and their errors corrected, as such, by an appellate tribunal. In the action brought at the instance of a party the Court would not be restrained or controlled by the action of the Board of County Canvassers in deciding that a return was sufficient and valid or otherwise; it would decide any such question as if no decision had been made by that Board. This was decided in *Gatling* v. *Boone*, 98 N. C., 573, and *Roberts* v. *Calvert*, Id, 580. Hence any inquiry in this action as to whether the Board of County Canvassers properly or improperly rejected the returns from St. John's township was wholly immaterial and could serve no just purpose.

The single material issue raised by the pleadings in this action was, did the relator receive a majority of the votes cast at the election mentioned for Clerk of the Superior Court? The first issue submitted to the jury, though not precise, embodied and involved that inquiry. The returns of the election if sufficient as such, were evidence, though not necessarily conclusive, to prove or disprove the affirmative of that issue. If for any cause they or any of them

were not sufficient and therefore not evidence, then any competent evidence might have been received tending to prove what the vote cast really was at any particular voting place in question, and this was so without reference to what the Board of County Canvassers may have decided in respect to any return. The true inquiry on the trial was not what the board mentioned decided, but what was the true result of the election as to the relator. This was the leading, and one of the chief purposes of the action.

The second and third issues submitted to the jury were wholly immaterial and improperly submitted. They involved no pertinent or material inquiry. If the relator received a majority of the votes cast he was elected and entitled to be inducted into office, whether the board mentioned rejected the returns of the election of the township mentioned or not. In no proper sense did their decision as to these returns determine or affect the number of votes cast in those townships, or in any way affect the result to be ascertained and determined by this action. Their decision did not determine, nor was it evidence of the number of votes really cast. As we have seen, it was not their province to ascertain the result of the election otherwise than by the returns received by them. They could not go behind the returns, and make inquiry as to the actual number of votes cast and thus determine the result of the election.

We are therefore of opinion that the Court ought to have disregarded the second and third issues and the verdict of the jury upon them, and that it ought to have given judgment for the relator upon the verdict responsive to the first issue.

It follows that the defendant was not entitled to have the judgment which he asks the Court to give in his favor.

It was contended on the argument for the defendant, that inasmuch as the parties agreed upon the issues submitted to

the jury, the second and third ones should be treated as material in some possible aspect of them, and that the judgment appealed from should be affirmed. But, as we have seen above, these issues were not pertinent in any sense, and were wholly immaterial. If they had served any pertinent purpose, and in their nature could have effected the issues properly raised by the pleadings and submitted to the jury, then it might be otherwise, as was the case in *Porter* v. *The Railroad Co.*, 97 N. C., 66. There some of the issues agreed upon were immaterial, but they were such as bore upon and affected the issues raised by the pleading, and probably misled the jury, and thus brought about a verdict of contradictory findings of fact. That was not so in this case. Here the immaterial issues did not bear upon the material one, nor was the verdict inconsistent and contradictory, nor, moreover, did the immaterial one probably mislead the jury as to the first issue; it does not so appear in the controversy; it seems they did not regard the action of the Board of County Canvassers in rejecting the returns as having any bearing upon, or as having anything to do with the votes actually cast at the election. They found that the relator received a majority of the votes cast, and this they could not have done, as appears from the facts stated in the case settled on appeal, if they had disregarded the votes cast at the voting places, the returns from which were rejected by the Board.

It does not appear that the submission of the immaterial issues prejudiced the defendant, and as it does not, that they were submitted, is not ground for a new trial—certainly, when the party complaining agreed to submit them. *Porter* v. *Railroad Co.*, *supra*; *Cumming* v. *Barber*, 99 N. C., 332; *Rigsbee* v. *Durham*, 99 N. C., 341.

There is error. Let this opinion be certified to the Superior Court, to the end that judgment may be entered there in favor of the relator according to law. It is so ordered.

Error.

SMITH, C. J., dissenting. If I were to put the construction upon the issue and responsive findings of the jury which other members of the Court put upon them, I would concur in the disposition made of the appeal. But I think they fairly bear a very different meaning, as understood and acted on in the Court below.

The answer, controverting the allegations in the complaint, declares, in its sixth article, that votes returned from the two precincts mentioned were not counted, because the election held at each " was null and void, and that the returns from these precincts were invalid and void."

To meet this conflict in the pleading, the several issues were agreed upon and submitted to the jury, and as the proper inquiry to be made in the action was, in substance, whether the returns were so vitiated as that, in law, they ought not now to be counted in the pending investigation, or should be rejected, involving, not so much the power of the canvassing boards to exclude, as the correctness of the action itself to be passed on by a Court in whom such power is vested. Were the reasons for excluding the returns which determined the conduct of the canvassing board sufficient to warrant their exclusion at the present trial? Thus understood, the findings upon the 2d and 3d issues are repugnant to the finding on the first. For if the relator did receive a majority of the votes cast in the county, the votes in the two precincts, which reduced the number of the relator's votes to a minority, ought not now, in determining the rights of the contesting claimants, to be taken into the computation; then the action of the canvassing board, though outside of any authority conferred by law, was, if such authority had been possessed, correct in itself, and should guide and control in the Court.

Taking this view of the verdict, the Judge was left no other course, except to set aside the verdict and re-commit the

matter to another jury, and in this he committed no error. Such was the action of the Court, under similar circumstances of irreconcilable findings of the jury in *Mitchell* v. *Brown*, 88 N. C., 156, and this is a proper precedent.