YOUNG v. TOWN OF HENDERSONVILLE.

(Filed December 20, 1901.)

1. ELECTIONS—*Judges of Election—Voters—Qualified—Acts (Private) 1901, Ch. 122.*

Under Acts (Private) 1901, Ch. 122, the judges of election can not decide upon the number of qualified voters or declare the result of the election.

2. ELECTIONS—*Registration Books—Voters—Qualified.*

The names on the registration book are *prima facie* qualified voters, but without other support it is not sufficient to overcome the evidence of the legal declaration of the persons authorized to declare the result of an election.

3. INJUNCTION—*Taxation—Elections.*

The injunction to restrain the collection of the tax complained of in this case was properly refused.

DOUGLAS, J., dissenting.

FURCHES, C. J. I think the injunction should have been continued to the hearing.

ACTION by C. C. Young and others against the Town of Hendersonville, heard by Judge *M. H. Justice,* at Chambers, at Columbus, July 3, 1901. From an order refusing an injunction, the plaintiffs appealed.

*Shepherd & Shepherd,* for the plaintiffs.
*Busbee & Busbee,* for the defendant.

Montgomery, J.   The General Assembly, at its session of 1901, Private Acts, Chap. 122, empowered the Board of Commissioners of the town of Hendersonville, to submit to the qualified voters of that town the question whether or not a special tax should be levied annually for graded school purposes to supplement the public school fund, the election to be held "under the rules and regulations governing municipal elections in said town."   The election was held on July 3, 1901; and there being but one polling-place in the town, the judges of election declared the result of the election giving the number of the votes for the special tax and the number against it, and that a majority of the qualified voters had not voted for the tax.   And they made a report to the Board of Commissioners of the town of the number of votes cast for and against the tax, and the number of the qualified voters of the town.   Afterwards, on the 1st day of August, 1901, the Board of Commissioners of the town, receiving the number of votes cast for and against the tax set out in the report of the judges of election as correct and true, went into an examination of the registration book in order to ascertain the number of the qualified voters on the day of the election. Upon that examination they took proof, and found that 35 names on the registration book had ceased to be qualified voters because of removals and death.   They eliminated those 35 names from the registration book, with the result that the number of votes cast for the special tax was a majority of the qualified voters of the town, and they so held and declared. At the same time, the Board of Commissioners levied a special tax upon the property and polls of the town, and placed the same in the hands of a collector.

The plaintiffs, who are citizens and tax-payers of the town, brought this action against the defendants, the Board of Commissioners, for the purpose of having the action of the defendants declared void, and to have them enjoined from

YOUNG *v.* HENDERSONVILLE.

collecting the taxes, claiming the declaration of the judges of election to be the true result. Upon the motion for an injunction by the plaintiffs to restrain the defendants from collecting the taxes, the matter was heard upon the complaint and answer, treated as affidavits, and other affidavits on both sides, and the injunction was refused and a former restraining order in the case vacated.

His Honor held that the declaration of the vote by the judges of election and their report of the same made out a *prima facie* case for the plaintiffs, that is, that the election was against the levying of the special tax, but that, as the defendants had shown by their answer and affidavits that 35 of the names on the register of voters were not qualified voters at the time of the election, and that as the plaintiffs did not deny or dispute that fact, under the decision of *Riggsbee v. Durham,* 99 N. C., 341, the *prima facie* case of the correctness of the declaration and the return of the votes by the judges of election had been overcome, and that he, in chambers, upon the hearing of the injunction, could find that fact upon the evidence and declare the result. We think the order refusing the injunction and vacating the restraining order theretofore granted was correct, but that the true ground therefor was another one than that given by his Honor.

We think that it was no part of the duty of the judges of election to decide upon the number of qualified voters, but that it was their duty, simply, to declare the number of votes cast for and against the special tax, and report that vote to the Board of Commissioners. In the case of *Smallwood v. City of New Bern,* 90 N. C., 36, the Mayor and Council were charged with the duty of submitting a similar proposition to the one in this case to the qualified voters of that city. The statute authorizing the submitting of the proposition was in these words: "The Mayor and Council of the city of New Bern are authorized and required to submit to the

qualified voters of said city, at the next regular meeting of Councilmen, and under the rules and regulations governing said election, whether an annual assessment shall be levied therein for the support of one or more graded schools in said city." The language there is substantially the same as that of the act which authorized the submitting of the proposition to the qualified voters of Hendersonville. The Court said there, they (the Board of Commissioners) had to act upon the result, if a majority of the votes should be cast in the affirmative. They were disinterested—had no personal interest to subserve not common to every other citizen. They might well and reasonably be charged with a service germane to their official relations to the city. They were required to *submit* the proposition. How and to what extent? When was the submission to be complete? And how was it to be completed? Certainly not until the vote should be completely taken by them "under the rules and regulations governing said (the ordinary city) election." This latter clause can not be construed to mean literally "under" the rules and regulations governing" the city election. It means, and must mean in the nature of the matter, only that such rules and regulations as apply, and as far as they needfully apply, in taking the vote. The Mayor and Council were to submit the proposition, that is, superintend, direct, supervise the vote upon it from the beginning to the end of taking and ascertaining the result of it, employing the ordinary machinery of the regular election as far as the same might be applicable. The decision in that case seems decisive of the one before us.

His Honor had before him the action of the Board of Commissioners of the town—their investigation and examination as to how many qualified voters there were on the day of election, the declaration of the result, and that a majority of that vote had been cast for the special election on the one

side, and the declaration of the judges of election and their report, and the number of names on the registration book, on the other side. The names on the registration book were *prima facie* voters, but without other support it is not sufficient to overcome the evidence of the legal declaration of the persons authorized to declare the result of the election that a different number was the true one. It was the duty, as we have seen, of the Board of Commissioners to ascertain the whole number of the qualified voters of the town, and therefore their declaration as to the number was better and higher evidence *prima facie* in that respect than registration books. The register was corrected by the Board, and the registration book alone was not evidence sufficient to rebut the presumption of the Board's declaration of the true number of qualified voters. *Riggsbee v. Durham, supra.*

The injunction, therefore, should not have been granted for the reasons stated above. Of course the declaration of the result of the vote is not final. It may be attacked in the Courts directly for fraud or mistake, and the true vote, if there was fraud or mistake in the declaration of the result by the Commissioners, ascertained and declared by the Court. But, until that is done, the declaration of the Board of the result is conclusive. *Smallwood v. New Bern* and *Riggsbee v. Durham, supra.* That is the main object of this action. The injunction prayed for in the meantime the plaintiffs were not entitled to, for the reasons we have given. The plaintiffs' whole alleged equity is denied, and it appears from the answer and affidavits that their case was fully met at all points.

Affirmed.

Douglas, J., dissents.

Furches, C. J. I think the injunction should have been continued to the hearing.