B. L. DUKE, in behalf of himself, &c., v. PAUL A. BROWN, tax
collector, et als.

*Constitutional Law—Qualified Voters—Municipal Corpora-
tions—Municipal Bonds.*

1. Only those persons whose names appear on the registration books are
qualified voters, within the meaning of Art. 7, §7, of the Consti-
tution.
2. The registration books are *prima facie* evidence of the number of
qualified voters in a town, but they are open for correction on
account of deaths, &c., and *perhaps* for intrinsic disqualifications
and errors in admitting persons to register.
3. Where there is an inherent constitutional defect in the statute author-
izing the issue of municipal bonds, a purchaser of the bonds takes
them with notice of their illegal origin, for purchasers must inquire
into the authority by which the bonds are issued, and are held to
notice of any defect therein.
4. A majority of the qualified voters, and not merely of those voting, is
necessary to enable a municipal corporation to loan its credit or con-
tract a debt.

(*Riggsbee* v. *Durham,* 94 N. C., 800; *Puett* v. *The Com'rs,* 94 N. C., 709;
*Norment* v. *Charlotte,* 85 N. C., 387; *Southerland* v. *Goldsboro,* at
this Term; cited and approved.  *R. R. Co.* v. *Com'rs,* 72 N. C., 486;
modified.)

MOTION to continue an injunction to the hearing, in a cause
pending in the Superior Court of DURHAM county, heard
before *Clark, Judge,* at Chambers, in Raleigh, on April 22d,
1886.  His Honor refused the motion, and the plaintiff
appealed.

The facts appear in the opinion.

*Messrs. Jos. B. Batchelor, R. B. Boone* and *John Devereux, Jr.,*
for the plaintiffs.

*Messrs. Wm. W. Fuller, John W. Graham, James S. Manning,
John Manning* and *Thomas Ruffin,* for the defendants.

SMITH, C. J.  In the recent case of *Riggsbee* v. *Durham*, 94 N. C., 800; it was held, that the  enactment by the  General Assembly for the maintenance of a graded school in the town of Durham (Acts of 1881, chap. 231), was unauthorized by, and in violation of the Constitution of the State, in its essential and connected provisions, and that the taxes contemplated by it could not be enforced.   At the session of 1885, was passed an Act, which authorizes, upon an approving popular vote of a majority of those who may vote, the issue of bonds in the aggregate not exceeding $15,000; and the obtaining a loan upon them by the commissioners of Durham, to be expended "in the purchase and erection of suitable grounds and buildings for the Durham graded or public schools for white children," under the control and direction of the graded school committee, ch. 87, Private Acts of 1885.

The election provided for was held, and of the whole number of votes cast, (370), there were given 245 for, and 125 against the proposed loan, while the number of registered voters was 607, more than double the number of the favoring voters.   The election being, however, in accordance with the statute, the result was declared and reported in writing by the inspectors of election to the board of commissioners of the town, who proceeded to dispose of the bonds, and in order to provide for the payment of interest and a fund to meet the obligations at maturity, on August 4th, 1885, levied a tax of eight cents upon the $100 worth of real and personal property, and (as we suppose, for such is the statutory requirement), thirty cents on each poll.   The section (3) imposing this duty, contains a proviso, "that the tax collected from the colored population of the town shall be applied for the benefit of the public schools for colored children, as now provided by law in said town."

The present action on behalf of the tax payers, against the defendants, the officer charged with the collection of the

taxes and engaged in doing so, is to arrest his action, upon the twofold ground, that the purposes and objects of the law, by reason of its race discriminating features, are repugnant to the Constitution, and further that there have not voted a "majority of the qualified voters" of the town giving sanction to the loan, as required by Art. VII, §7, thereof.

It is unnecessary to review the discussions found in the case cited, and in *Puett* v. *Commissioners of Gaston*, disposed of at the same Term, (94 N. C., 709;) and we are content to pass upon the sufficiency of the last objection, the want of a compliance with the constitutional mandate, which is alike disregarded in the statute and in the action of the commissioners under it.

We have at the present Term, in *Southerland* v. *Goldsboro*, modifying somewhat the definition given by RODMAN, J., in *R. R. Co.* v. *Commissioners of Caldwell*, 72 N. C., 486, to the term "*qualified voters*" as used in Art. VII, §7, by confining it to those whose competency has been passed on in their admission to registration, as *prima facie* proof of the number; and of course this list being open to correction for deaths, removals and other causes subsequently occurring, and perhaps for intrinsic disqualifications existing at the time of registration, and error in admitting their names to the list.

But it may be suggested, that the defects not known to the innocent purchasers of these public securities, do not enter in to vitiate their obligatory force, when the vote has been officially counted and the result announced. This is true, as held in *Norment* v. *Commissioners of Charlotte*, 85 N. C., 387 ; and when those charged with the conduct of an election, have determined the facts necessary to its efficacy, *this being matter in pais*, it is to be taken as conclusively settled, as in that case, that "a majority of *all the qualified voters of the city*" had "voted in favor of a graded school." This. is not our case. The commissioners to whom the vote is certified, determine the respective votes for and against the

9

issue of the bonds, and the majority thereof in favor of it *" as allowed by said Act for the purpose therein set out,"* and that *all the requirements of said Act and of the law* have been duly and regularly complied with." They do not certify, nor could they on the returns made, that the constitutional majority of affirmative votes had been cast, and in this feature the case essentially differs from that of *Norment* v. *Commissioners, supra.*

The election is under the statute, which requires, not a majority of the *voters qualified* to vote, but only a majority of those who do vote, and this is all that is determined and declared by the board of commissioners, while the command in the fundamental law, as a limitation upon the capacity to contract a debt and levy taxes for its payment, outside of necessary expenses, is disregarded.

Now, while it may admit of question whether in the absence of an enabling power conferred, a municipal corporation can borrow money and issue public securities therefor, since the decision in *The Mayor* v. *Ray,* 19 Wall., 468, rendered by a bare majority of the Court in the negative, it cannot be doubted that when restrictions are imposed upon its exercise, they must be observed, and parties taking such securities under a statute which ignores the restraint, cannot occupy the position of innocent purchasers. Persons who receive them when issued under an unconstitutional act, are chargeable with a knowledge of their illegal origin, for they must inquire into the authority of those who undertake to put them out.

There are conflicting rulings upon the point whether the requirement of a majority of qualified voters to incur a debt is not in effect the same as a majority of those voting, but we do not feel at liberty wholly to ignore a provision and the difference between the terms used, as well as the deliberate conclusion arrived at in the case cited, in ascertaining the meaning of a clause intended to protect citizens

and tax payers against heavy and oppressive taxation, arising out of municipal involvement in the contraction of debts, the evils of which had been experienced. There are numerous restraints, some of them unusual, put upon the taxing power both of the State and its subordinate municipal bodies in the Constitution, indicating everywhere a distrust in its unlimited exercise and liability to abuse, which need not be enumerated, but which have come before the Court, and we cannot think, with all these safeguards, that it was intended to dispense with the approval of a majority of the qualified voters, and allow an inconsiderable fraction it might be, to determine the result. Indifference is not the test; an *active and expressed approval is necessary*, and this is ascertained by a majority of those entitled to vote. However forcible may be the reasoning, and however numerous the rulings in other States, which construe a failure to vote as an acquiescence in what is done by those who do vote, we cannot put such an interpretation upon our organic law, and thus dispense with one of its most protective provisions against the contracting of a municipal debt.

The injunction, then, ought to have been continued, and there is error in the refusal to do so. This will be certified for further proceedings in the Court below, according to this opinion.

Error.                                          Reversed.