The plaintiffs ask for a writ of mandamus to compel the defendants to issue six thousand dollars of bonds and deliver same to plaintiffs, on account of Mt. Tirzah Township in said county, and to accept for same sixty shares of stock in plaintiff's corporation. To entitle them to the relief asked, they allege the following facts:
The plaintiff is a corporation, having succeeded to all the rights and franchises of the once existing Roxboro Railroad Company, to which said company, under Laws 1885, ch. 342, the townships of Person County (including Mt. Tirzah), under certain conditions, were authorized to subscribe stock. The said acts provided for the holding of an election in the various townships of said county upon the question of subscription, and provided that the subscription should be authorized and made whenever a"majority of all the votes cast" at any such election should be for subscription. On 17 September, 1886, all the precedent conditions of said chapter having been complied with, and election was held thereunder in Mt. Tirzah Township upon the question of subscribing six thousand dollars to said company, and that the "returns thereof showed that a majority of the votes cast were in favor of *Page 117 
subscription; that the defendants canvassed said returns and declared the result in accordance therewith." Afterwards an agent, appointed by the defendants, made the said subscription; that said township has ever since then been duly represented in all the meetings of (161) the plaintiff and its predecessor the said Roxboro Railroad Company; that the plaintiff, relying in good faith upon said subscription together with other subscriptions, began the construction of its road from Lynchburg to Durham, contracting with a certain construction company to do the work, and in part payment agreeing to delivery to said construction company, when received, six thousand dollars of bonds of said township of Mt. Tirzah; that defendants in 1889 adopted a form of coupon bond for said township; that plaintiff has done all that is required to be done by it under said chapter to entitle it to the issue of said bonds, and have tendered to the defendants stock to the amount of said bonds.
The defendants refuse to issue and deliver said bonds, on account of the following facts:
That the said Laws 1885, ch. 342, authorizing a subscription upon a majority of the votes cast, is unconstitutional; that at said election there were, on the registration books, two hundred and seventeen duly qualified voters, of which number only fifty-nine voted for subscription, leaving one hundred and fifty-eight votes to be considered against subscription, wherefore the subscription is void; that the defendants have never declared that the subscription was authorized; that plaintiff has all the while known that the subscription had not been approved by a majority of the qualified voters.
That it is true a representative of the township was appointed and a form of coupon bond adopted by the defendants, but that when these things were done a director and an attorney of plaintiff and its predecessor were before the defendants in session assembled representing the plaintiff, and it was then especially understood and agreed that the said acts of the defendants should be without weight against the people of said township, who never thought their township was liable for any subscription, and that it was then understood that the validity of said subscription might be tested at any future time.
That no subscription was authorized by said election, that the (162) tax-payers of said township have never considered the subscription valid, and that the plaintiff never in good faith relied upon it, but all the while knew of its illegality, through two of its representatives, both of whom are citizens of said county, and that the defendants have done all their acts, in relation to said subscription, with the especial agreement with said director and attorney, representing both the plaintiff *Page 118 
and its predecessor, the Roxboro Railroad, that said acts should be without effect against said township.
His Honor was of the opinion that the validity of the said election could not now be contested, and that the defendants could not avail themselves of the matters of defense set up in the answer, and gave judgment that the writ of mandamus issue as prayed.
From this judgment defendants appealed.
It has been settled in this State, by numerous decisions, that a majority of the qualified or registered voters, and not merely of those voting, is necessary to enable a municipal corporation to loan its credit or contract a debt, under the provisions of Article VII, section 7 of Constitution; Southerland v. Goldsboro, 96 N.C. 49; Duke v. Brown,96 N.C. 127; Markham v. Manning, 96 N.C. 132; McDowell v. ConstructionCo., 96 N.C. 81; Riggsbee v. Durham, 99 N.C. 341.
The plaintiff, who applies for a mandamus to compel the county commissioners to issue bonds for Mount Tirzah Township, does not allege an adjudication of declaration by the county commissioners, on a canvass of the returns, that the subscription had been carried by a (163) majority of the qualified voters of said township. Nor does it aver that, in fact, it was so carried. The complaint alleges that "the returns showed that a majority of the votes cast were in favor of subscription," and a declaration of the result to that effect by the commissioners on a canvass of the vote, and a copy of such, is set out. The basis of authority to issue the bonds, the vote of a majority of the qualified voters, is wanting and the mandamus must be denied.
Had the plaintiff averred that, though not so declared by the canvassing board, a majority of the qualified voters of said township, in fact, voted in favor of subscription, the proceedings, if brought to impeach the decision of the canvassing board, would be too late, the election having been held 7 August, 1886, and this action not instituted till 31 December, 1890. Jones v. Commissioners, 107 N.C. 248. In fact, however, the proceeding is not to impeach the declaration of the result as declared, and it is alleged in the answer, and it was not controverted in the argument, that a majority of the qualified voters of said township did not vote in favor of the subscription. The plaintiff, however, claims that the defendants are estopped by the fact that they appointed an agent to subscribe the amount of the subscription on behalf of said township, who did so subscribe for it on behalf of the township on the books of the plaintiff company, and that said township has been *Page 119 
represented in the meetings of the stockholders of the company by an agent appointed by the justices of the peace of the township, who has voted in such meetings, and that the plaintiff has made contracts relying upon the validity of such subscription. These allegations are denied in the answer, and it is alleged that the plaintiff well knew that such election did not authorize the issuance of the bonds, and this before making the contracts referred to. The judge found the facts on this contention as claimed by the plaintiff. The only authority that can fasten upon the township the obligation to pay a subscription, is the duly ascertained vote of a majority of its qualified voters. Without (164) it any action of the county commissioners or township justices, appointing agents to subscribe for and to represent or vote for said township in the stockholders' meetings of the plaintiff company, was a nullity and ultra vires. The life-giving power required by the Constitution, the due expression of the popular will at the ballot-box, being lacking, if the commissioners had gone still further and actually issued the bonds, they would have been invalid even in the hands of innocent purchasers. Duke v. Brown, 96 N.C. 127.
Jones v. Commissioners, 107 N.C. 248, differs from this case. There the townships named voted the same day as those in this case, but as to them the county commissioners, on a canvass of the vote, declared that a majority of the qualified voters, duly registered, had voted in favor of the subscription. Afterwards the bonds were issued and taxes levied to pay the interest. After the lapse of more than three years, the plaintiff, there a taxpayer, sought to impeach the result, alleging, among other things, that a majority of the qualified voters had not, in fact, voted in favor of such subscription. The court, while adhering to the precedents that such proceedings were admissible, if made in reasonable time, held that the delay was unreasonable and that the proceeding was barred.
It is unnecessary to consider the exception that the summons was returnable at chambers and not to term. The complaint fails to state a cause of action.
Action dismissed.
Cited: Claybrook v. Comrs., 114 N.C. 461; Glenn v. Wray, 126 N.C. 734;Hood v. Sutton, 175 N.C. 101. *Page 120 
(165)