The provisions of the act to incorporate the Roanoke and Southern Railway Company (Laws 1887, ch. 87) which are applicable to our present inquiry are substantially as follows: Any town through or near which the said road may run may subscribe for and hold stock in said company, when authorized so to do by a majority of all the qualified voters of such town, under the provisions of the said act. Upon presentation of a petition, signed by at least twenty resident taxpayers of any town, to the board of commissioners (456) of any county in which said town is situated, requesting said commissioners to submit to the vote of the qualified voters of their town a proposition to subscribe a definite sum named in the petition to the capital stock of said company, the board of commissioners shall, within sixty days, order an election to be held and submit to the qualified voters thereof the question of subscribing, according to the petition, at which election those in favor of such subscription shall vote "Subscription," and those opposed shall vote "No subscription." The said election of directed to be held, registrar, poll-holders and judges appointed, and the registration of voters taken as provided by law for the election of commissioners or aldermen of cities and towns, except that the poll-holders shall make returns within three days after the election of the votes cast to the board of county commissioners, who shall, on the third day after the election, canvass the returns, declare the result and cause the same to be entered on their minutes. And if a subscription shall be directed by a majority of all the qualified voters of the town the chairman of the board of commissioners shall, within sixty days after said vote is ascertained, subscribe the amount so authorized, to be paid for in the bonds of the town at their face value, and the board of commissioners shall issue coupon bonds to the amount authorized in the denominations specified in the act, indicating on the face of the bond on account of what town and the conditions upon which they are issued. Said bonds are to run not exceeding forty years, and bear interest not exceeding six per cent per annum. And the board of commissioners are to levy annually a special tax upon all the property and polls of said town to regularly pay the interest as it shall fall due and to provide a sinking fund to pay off the principal at the maturity of the bonds. The tax collector of the town is to collect the tax and (457) promptly apply it to the payment of the interest and principal as provided for in the act. By chapter 118, Laws 1893, there was an amendment to the foregoing, providing that if any such city or town fail or neglect to appoint a tax collector on or before 30 May of any *Page 288 
year it shall be the duty of the sheriff of the county to collect all taxes duly levied upon the property and polls of said town.
On the first Monday in October, 1888, a petition was filed before the Board of Commissioners of Rockingham County, purporting to be signed by twenty-three voters and taxpayers, of the town of Stoneville, asking the board to order an election in the town of Stoneville, and an election was ordered to be held on 3 November, 1888, at which the legally qualified voters may be entitled to vote for or against a subscription of $5,000, etc. And, as appears from the minutes of the board, return was made of said election by the judges and registrar to the board of commissioners on 5 November, 1888, and the following action taken by the board:
"It appearing to the satisfaction of the board of county commissioners, after due canvass, that the foregoing returns of election are correct, and the said board hereby approve the said returns."
On 8 December, 1890, the board of commissioners delivered to the Roanoke and Southern Railway Company fifty bonds of $100 each, a copy of one of which bonds (all being alike) is made a part of the statement. On 19 December, 1890, the said bonds were transferred and assigned by said railway company to the defendant construction company, in consideration of work and labor done upon said road, and said railroad was built and is now operated through the town of Stoneville.
The plaintiffs allege the following irregularities in the (458) proceedings under which the election was held and the action of the board of county commissioners thereafter:
1. That the petitioners styled themselves voters and taxpayers of the town of Stoneville, and not resident taxpayers, as required by section 22 of the act of 1887.
2. That the election was ordered to be held on 30 November, and was held on the 3d day of said month.
3. That there was no registration of voters had before the election, as required by law.
4. That the ballots used in said election were "For subscription," instead of simply "Subscription," and "Against subscription," instead of "No subscription," as the statute required.
5. That it nowhere appears that a majority of the qualified voters of the town voted in favor of subscription.
6. That no qualified voter of the town did vote "Subscription."
7. That the board of commissioners made no canvass of the returns of said election on the third day thereafter, as by law they were required to do. *Page 289 
8. That the board of commissioners failed to ascertain the result of said election, or to declare the same, or to cause the same to be entered on their minutes.
And the plaintiffs further charge that the bonds have never passed into the hands of innocent holders for value without notice of the alleged irregularities. The complaint, answers and replies, together with many affidavits, were offered upon the motion for an injunction, which it will not be necessary to set out here, as we have stated the contentions of the parties.
The holders of the bonds in question have been made parties and have filed their answers. The defendants contend:
1. That the plaintiffs have failed to bring their action within a reasonable time and until the bonds have passed into the hands (459) of innocent or bona fide holders for value and without notice, and therefore that the action should be dismissed.
2. That the general allegation of the complaint that a majority of the qualified voters did not vote subscription is too vague and not stated with the certainty required, and so with regard to the allegation that the registration books were not kept open for thirty days before the election, it not being alleged that any voter was deprived of the right to register and vote.
3. That a majority of qualified voters did vote in favor of subscription.
4. That the bonds in question have passed into the hands of bona fide
holders for value and without notice, and that the board of commissioners and the town of Stoneville are estopped from denying the validity of the bonds by the entries upon the minutes of the board and the recitals in the bonds.
It will be seen that two issues arise upon the pleadings, involving serious questions in dispute:
1. Did a majority of the qualified voters of the town of Stoneville vote for the subscription?
2. Are the defendants the Virginia and North Carolina Construction Company and J. M. Cummings bona fide holders of the bonds and without notice of any irregularities in their issue?
It follows that pending the determination of these issues it will be necessary that the injunction should be continued.
In considering the questions presented to us by the contentions of the parties as to the liability of a municipal corporation on bonds issued for its benefit, we are traveling upon a beaten track. The law has been well settled by repeated adjudications in the Supreme Court of the United *Page 290 
(460) States and in many of the States of the Union, and nowhere better than by our predecessors in this court.
There is no statute of limitations applicable to this action, therefore it must be brought within a reasonable time and before the rights of innocent holders have intervened. Jones v. Commissioners, 107 N.C. 248.
It will be understood that where there is an inherent constitutional defect in the statute authorizing the issue of municipal bonds or in the proceedings under which they are issued a purchaser of the bonds takes them with notice, and there can be no such thing as an innocent holder, or, where there is a plain violation of the statute conferring the authority to issue bonds, as in Anthony v. Jones, 101 U.S. 693, where the bonds were required by the statute to be presented to the State Auditor to be registered, certified and indorsed before they were negotiable, and this requirement was disregarded, the notice of the defect was borne upon the bond itself by the lack of indorsement, or, in McClure v. Oxford,94 U.S. 429, where the recitals in the bonds showed that they were illegally issued, the same result will follow.
The doctrine now so thoroughly settled is stated in a very able opinion by Mr. Justice Bynum in Belo v. Commissioners, 76 N.C. 489: "While the decisions are very uniform that the record of the justice's court affirming the fact of compliance with the conditions precedent to the subscription of stock is conclusive, and estops the county from denying the validity of the bonds in the hands of a bona fide holder before maturity, they are equally uniform in giving the same effect to the recitals in the bonds themselves that they had been issued in pursuance of the law which authorized their issue. The recital is a determination of the question, and the holder has a right to rely on it." Many (461) authorities are cited, and since the decision was made the principle has often been reiterated in this Court, more especially in numerous cases where actions were brought to restrain the collection of special taxes for graded schools and under the fence law, where it was uniformly held that the declaration and finding of the board of commissioners that at an election which was properly held, a majority of the voters favored the provisions of the act, was final and conclusive, except when attacked by direct proceedings brought for that purpose before rights of innocent holders had intervened. Simpson v. Commissioners,84 N.C. 158; Cain v. Commissioners, 86 N.C. 8; Smallwood v. New Bern,90 N.C. 36; S. v. Emery, 98 N.C. 768.
In the Supreme Court of the United States there is an unbroken current of authorities from Knox County v. Aspinwall, 21 How., 539, to Hodges v.Dixon, 150 U.S. 182, where it is said, after citing many *Page 291 
authorities that "recitals in bonds issued under legislative authority may estop the municipality from disputing their authority as against a bonafide holder for value, but when the municipal bonds are issued in violation of a constitutional provision no such estoppel can arise by reason of any recitals contained in the bonds."
The exception as to issue or violation of constitutional provisions is expressly stated in Duke v. Brown, 96 N.C. 127, and in R. R. v.Commissioners, 109 N.C. 159. In the former case it was said: "But it may be suggested that the defects not known to the innocent purchasers of these public securities do not enter in to vitiate their obligatory force, when the vote has been officially counted and the result announced. This is true, as held in Norment v. Commissioners, 85 N.C. 387, and when those charged with the conduct of an election have determined the facts necessary to its efficacy, this being matter in pais, it is to be taken as conclusively settled, as in that case, that a majority of all the qualified voters of the city had voted in favor of a graded school. This is not our case. The commissioners to whom the vote is (462) certified determined the respective votes for and against the issue of the bonds, and a majority thereof in favor of it, as allowed by said act for the purpose therein set out, and that all the requirements of said act and of the law have been duly and regularly complied with. They do not certify, nor could they on the returns made, that the constitutional majority of affirmative votes had been cast, and in this feature the case essentially differs from that of Norment v. Commissioners."
In R. R. v. Commissioners, supra, it is said: "The only authority that can fasten upon the township an obligation to pay a subscription is the duly ascertained vote of a majority of its qualified voters. Without it any action of the county commissioners or township justices, appointing agents to subscribe for and to represent or vote for said township in the stockholders' meetings of the plaintiff company, was a nullity and ultravires. The life-giving power required by the Constitution, the due expression of the popular will at the ballot-box, being lacking, if the commissioners had gone still further and actually issued the bonds they would have been invalid even in the hands of innocent purchasers."
By reference to the returns of election it will be seen that it is simply that the votes cast were for subscription 21, against subscription 1. And the declaration of the board of commissioners is that it appearing to them, "after due canvass, that the foregoing returns of election are correct, and the said board hereby approve the said returns," there is no declaration here that a majority of the qualified voters favored the subscription. *Page 292 
We must look, then, to the recitals in the bonds, and there we find it stated that "the Board of Commissioners of the county of Rockingham, legally representing the body of the town aforesaid, having duly (463) ascertained the sense of the qualified voters of the town aforesaid to favor a corporate subscription to the capital stock of the Roanoke Southern Railway Company, by an election heretofore duly held for that purpose, have caused this bond to be issued to meet the installments upon the town subscription to said company, and the whole is done by virtue of an act of the General Assembly ratified 23 February, 1887, chapter 87, Laws 1887."
While the recitals in the bond are binding and conclusive in favor of abona fide holder for value, they refer to the act of Assembly under which the election was held, and put the purchaser upon notice of the requirements of the act, the same being a part of the recital by virtue of the reference to it. "To be a bona fide holder one must be himself a purchaser for value without notice, or the successor of one who was. Every man is chargeable with notice of that which the law requires him to know, and of that which, after being put upon inquiry, he might have ascertained by the exercise of reasonable diligence. Every dealer in municipal bonds, which upon their face refer to the statute under which they were issued, is bound to take notice of the statute and of all its requirements." ChiefJustice Waite, in McClure v. Oxford, supra. Referring to section 22 of said act, it will be seen that the duty of the board was to submit to the qualified voters of the town the question of subscribing to the capital stock of said company the amount specified in the petition, so that the recitals in the bond do not show a full compliance with the requirements of the act.
Treating the other irregularities charged by plaintiffs as only irregularities which would not vitiate the bonds in the hands of an innocent holder for value, the main question alleged and denied is (464) whether a majority of the qualified voters of the town of Stoneville voted in favor of the subscription, and this question must go to a jury. R. R. v. Commissioners, supra, and cases there cited.
As the recitals, both in the declaration of the result and in the bond, are defective, we are of the opinion that even though the holders of the bonds shall be bona fide and for value, they will not be protected unless the jury shall find that a majority of the qualified voters of Stoneville voted in favor of the subscription. We are also of the opinion that the petition styling the petitioners, voters and taxpayers instead of resident
taxpayers, as required by the statute, is an immaterial variance, for to be a voter it is necessary to be a resident. *Page 293 
It appears by the amended minutes of the board of commissioners that the order for an election was made for the 3d, the day on which it was held, and that the figure 30 was copied by mistake.
If it shall be made to appear by a verdict that a majority of the qualified voters voted in favor of the subscription we see no requirement that there should have been a new registration for the purposes of this election. The affidavits are conflicting, the registrar himself furnishing to each side an affidavit in support of its contention — the one as strong as the other. Whether the registration books were kept open or not would be controlled by a finding as to whether a majority of the qualified voters voted in favor of subscription, it being borne in mind that a qualified voter is a registered voter. Southerland v. Goldsboro,96 N.C. 49, and Duke v. Brown, supra. It does not appear that the ballots used did not follow the exact requirements of the statute. It was thereturn which stated that the votes were passed for subscription and against it, and this would follow if the ballots had been simply "Subscription" and "No subscription." Indeed, we should hold (465) that this variance, if it were proved, was immaterial, as it expressed the same meaning. We think and so hold that the examination and approval of the returns of election were a substantial compliance with the requirements of the statute that the board shall declare the result, etc. The fact that the tax levied made no provision for a sinking fund might be a grievance to the holders of the bonds, but we cannot see that the plaintiffs are prejudiced thereby. And the canvass on the second instead of the third day after the election was an irregularity which would not prejudice a bonafide holder.
It will be necessary to submit the second issue which we have suggested, because if the subscription was authorized by a vote of a majority of the qualified voters the alleged irregularities would not prevail against abona fide holder for value and without notice.
Affirmed.
Cited: R. R. v. Comrs., 116 N.C. 566; Claybrook v. Comrs., 117 N.C. 457;Caravan v. Comrs., 161 N.C. 102. *Page 294 
(466)