PÁCE v. RALEIGH.

(Filed November 28, 1905).

*Registered Voter—Qualifications—Payment of Poll Tax—*
*Registration—Elections.*

1. Under section 7, chapter 233, Laws 1903, which provides that "It
   shall be the duty of the governing body of any city or town, upon
   the petition of one-third of the registered voters therein, who were
   registered for the preceding municipal election, to order an elec-
   tion," only those persons are entitled to sign the petition, who,
   besides being lawfully registered, upon possessing the necessary
   qualifications, have further paid the poll tax (if liable for poll
   tax under Act V, section 1, of the Constitution).

2. The General Assembly can prescribe such terms as it thinks proper
   as a prerequisite to ordering an election.

BROWN AND WALKER, JJ., dissenting.

ACTION by State *ex. rel.* J. M. Pace and others against the
City of Raleigh, pending in the Superior Court of WAKE,
and heard by *Judge M. H. Justice,* at Chambers at Raleigh,
on the 27th of September, 1905, upon the pleadings and
admissions of the parties.

This was an application for a *mandamus.* The plaintiffs
and others presented a petition to the board of aldermen of
the City of Raleigh asking that an election be called to de-
termine whether saloons should be licensed in said city for
the sale of intoxicating liquor in lieu of the existing City
Dispensary. The committee to whom the petition was re-
ferred reported that they found on the registration books
1,826 names, but that 233 of those registered had moved
and 35 had died, leaving 1,568 valid registered names.
That after purging in the same manner from the petition
the names of those who had removed or died there remained
on the petition 543 names. Upon further reference to ascer-
tain how many of those upon the registration books and

the petition respectively were entitled to vote by having paid the poll tax for 1904 on or before May 1, 1905, as required by the Constitution, it was found that 266 persons on the registration list had not so entitled themselves to vote, of whom the names of 113 were on the petition. The board, thereupon, authorized any one entitled to vote at the proposed election to come forward and add their names to the petition or to withdraw them; whereupon there were 10 names added to the petition and 22 were withdrawn. The board found, in accordance with the above figures, that there were 1,302 registered voters, of whom 418 had signed the petition, being "sixteen names less than one-third of the registered voters who were registered at the last municipal election," and refused to order an election. This proceeding was brought for a *mandamus* against the board of aldermen to order the election, which being granted, the defendants appealed.

*Argo & Shaffer* and *W. B. Jones* for the plaintiffs.
*R. H. Battle, W. B. Snow* and *W. N. Jones* for the defendants.

CLARK, C. J.    Chapter 233, Laws 1903, provides: "Sec. 7. It shall be the duty of the governing body of any city or town, upon the petition of one-third (1-3) of the registered voters therein, who were registered for the preceding municipal election, to order an election to be held," etc.    "Sec. 8. Any person entitled to vote for members of the General Assembly shall have the right to vote at such election, in all boxes provided, and any such voter who is in favor of the manufacture," etc.,    *    *    *    "and every such voter who is in favor of bar rooms or saloons shall vote a ticket on which shall be written or printed," etc.

The sole question presented is, who are the persons entitled to sign a petition for an election under this statute

which requires "one-third (1-3) of the *registered voters* therein, who were registered for the preceding municipal election." The plaintiffs contend that a "registered voter" is any one who is duly and lawfully registered. The defendants contend that a "registered voter" must not only be registered, but he must also be a voter, *i. e.,* "entitled to vote," which right the Constitution denies to one who is merely registered—that it is further necessary that he shall have paid his poll tax. In short, the plaintiffs contend that any one who is registered is a voter, though he may not be an actual "voter" entitled to vote; while the defendants contend that he must not only be registered, but also a voter.

The plaintiffs are not entitled to their *mandamus* unless they can maintain their proposition that registration makes any one who is duly and lawfully registered, a "voter." Who is a voter? Webster's International Dictionary defines "Voter: One who votes, who is entitled to vote." This is the definition in section 8 of this act (chap. 233, Laws 1903,) which says, "Any person *entitled to vote* for, etc., shall have the *right to vote* at such election."

The language of the Constitution is not ambiguous. The Constitutional Amendment, now Article VI, section 4, provides: "Every person presenting himself for registration should be able to read and write any section of the Constitution in the English language; and *before he shall be entitled to vote,* he shall have paid on or before the first day of May of the year in which he proposes to vote, his poll tax for the previous year, as prescribed by Article V, section 1, of this Constitution." Then after the authorization of a permanent roll for those registering under the "Grandfather Clause," it is again added: "Provided, such person shall have paid his poll tax as above required." Before one is lawfully a voter he must be "entitled to vote," and from the above it is plain that being registered does not entitle one to vote, for it is added, both as to those whose names are upon the ordinary,

and the permanent roll, "and before they are entitled to vote," they shall have paid their poll tax (if liable for poll tax under Article V, section 1, of the Constitution).

Under the constitutional provisions prior to the amendment, every male person, born in the United States, or naturalized, 21 years old, resident in the State 12 months and in the county 90 days (who was not disqualified by conviction of felony) was an "elector" (or "qualified voter," as the decisions styled him for lack of a better word), and when registered was entitled to vote. As the Constitution then stood, nothing more was required and such person was a "registered voter." But the Constitutional Amendment made a radical change. It is now before us for the first time and decisions as to "qualified voters" and "registered voters," under the former constitutional requirements as to suffrage, throw no light upon the meaning of the new clauses which have taken their places in the Constitution.

Under the Constitutional Amendment of 1899, now Constitution, Article VI, section 1, every male person, born in the United States, or naturalized and possessing qualifications set out in this article, shall be entitled to vote, "except as herein otherwise provided." Section 2 requires two years' residence in the State, six months in the county and four months in the precinct (with disqualification by conviction of a penitentiary offense). Section 3 prescribes that a person offering to vote shall be a legally registered voter "as herein prescribed." Section 4 then provides that in addition to the above qualifications as to age and residence, "Every person presenting himself *for registration* shall be able to read and write any section of the Constitution in the English language" (unless registered under the "Grandfather Clause" later set out) ; "and before he shall be entitled to vote he shall have paid on or before 1 May of that year, 'his poll tax for the previous year' " (if liable thereto under Article V, section 1), and even as to those registered under the grand-

father clause and upon the "permanent record," who "shall forever thereafter have the right in all elections by the people in this State" (unless disqualified for crime), there is added, "Provided, such person shall have paid his poll tax as above required." This shows that under the former provisions one qualified by age and residence (and not disqualified by crime) was an "elector" and became, upon registration, a "registered voter;" but under the Constitutional Amendment one qualified by age and residence (and not disqualified by crime) is entitled to register, provided, further, he can read and write, as required, or can register under the "Grandfather Clause," but it is carefully added that in neither of those cases shall he become "entitled to vote" unless further he shall have paid his poll tax (if liable thereto) at the time prescribed.

The Constitutional Amendment was carefully thought out and fully debated both in the convention and before the people. There was doubtless good reasons, of public policy, for prescribing that no one, though otherwise qualified and duly and lawfully registered, should be entitled to vote unless he shall have paid his poll tax. Before that is done, he may be registered, but he cannot be a "registered *voter*," because he cannot vote.

The General Assembly could prescribe such terms as it thought proper as a prerequisite to ordering an election. It could have dispensed with any petition, or it need not have required one-third, or indeed that the petitioners should be "registered voters," but having done so we are only authorized to hold those to be voters who the Constitution says are "entitled to vote," *i. e.,* those who, besides being lawfully registered, upon possessing the necessary qualification, have further paid the poll tax (if liable). The object in requiring one-third of the "registered voters" to join in the petition was doubtless to avoid the expense, turmoil and heated controversy incident to an election of this kind, unless at least

one-third of those entitled to vote in such an election should indicate their desire that such election should be held.

The order of the board of aldermen was proper upon the facts before them. In the view we take of the case, we have not found it necessary to express any opinion upon the right of the board to purge the registration list, though there are authorities which seem to justify that course. *Duke v. Brown,* 96 N. C., 127; *Rigsbee v. Durham,* 99 N. C., 348. Nor have we been inadvertent to the fact that under the former constitutional provision one who was an "elector," *i. e.,* qualified to register was eligible to office, though not registered, and that under the "Amendment" no one is eligible to office unless he is a "voter," *i. e.,* registered upon proper qualification and having paid his poll tax (if liable). There is no hardship in this. The same public policy which requires the payment of poll tax and registration in addition to the qualification as to age and residence, to constitute a "voter" can surely require the same as to one who asks the suffrage of voters. If it be conceded that the board of aldermen had no right to purge the registration lists, then clearly the mandamus could not issue, for the petition with its 543 names did not contain one-third of the names (1,826) upon the registration lists. If the aldermen can purge the registration lists by striking off those voters who have become disqualified by removal, or otherwise, they can surely purge it, by striking off those who have never been entitled to vote because of the constitutional disqualification of not having paid their poll tax. It does not appear in the record that the tax list was the sole evidence resorted to, nor that such evidence was not corroborated by notice to the parties (as is probable) or otherwise, nor that any person affected alleged that his poll tax had been paid in fact, as would have been done if there had been any doubt as to any name which had been disallowed. Certainly there is no exception in the record to the method pursued, nor to the truth of the finding of non-

payment of poll tax as to any person, nor was any objection on that ground presented even in the argument here; but the plaintiffs earnestly and correctly contended that an appeal must be considered solely upon the exceptions set out in the record—save only exceptions that the court did not have jurisdiction or a cause of action is not stated, which objections alone can be taken for the first time in this court (Rule 27 and cases cited in Clark's Code, pp. 921-924,) and these objections cannot be open to a plaintiff. If the plaintiffs had any doubts as to the correctness of the findings of fact as to the non-payment of poll tax by any one, they should have contested it before the aldermen, and could again have tried that point *de novo* before the judge; for while the findings of fact by a Superior Court judge are binding upon us, the findings of fact by the aldermen were open to review before the Superior Court. *In re Deaton,* 105 N. C., 59. But so far from the plaintiffs contesting the truth of the findings of fact as to the non-payment of poll tax, the judgment recites that in the Superior Court it was "admitted by the parties, plaintiffs and defendants, that the only question to be considered in the case   *   *   *   is one of law, to-wit: Whether under section 7, chapter 233, Laws 1903, the payment of poll tax on or before 1 May of the year in which he offers to vote, should be applied as a test of competency to sign the petition." This was the sole question that was, or could be presented to us on the appeal.

No one is disfranchised by this opinion, but it is simply held that upon the findings of fact, to which the plaintiffs made no exception, one-third of those entitled to vote at the proposed election have not signed the petition. This would not of course be an estoppel nor preclude a further ascertainment of the fact in any election at which any party affected might offer to vote.

The judgment below is

Reversed.

BROWN, J., dissenting: I regret to differ with my brethren in any case and especially in this in which my natural inclinations strongly prompt me to concur. But my convictions are strong that the board of aldermen illegally struck from the petition the names of a large number of those who had the legal right to sign it. I am of opinion: 1. That the board had no power to strike them off for the alleged non-payment of poll tax. 2. That the board has no authority to pass upon such fact. 3. That if they had such authority they exercised it in an illegal manner and based their finding upon utterly incompetent evidence.

1. The right to petition for an election in certain cases is a right of the private citizen given by law. It is as much a legal right to those to whom it is given as the right to vote is to those who possess the necessary qualifications. In my judgment the qualifications necessary to legally petition for an election include only those which are necessary to enable a person to register and thereby become what our Constitution plainly calls a "registered voter." These do not include payment of poll tax. The language of the statute is as follows: "Sec. 7. That it shall be the duty of the governing body of any city or town, upon the petition of one-third (1-3) of the registered voters therein, who were registered for the preceding municipal election, to order an election to be held," etc. Chap. 233, Acts 1903. The Constitution, Article IV, section 3, enacts that "Every person offering to vote shall be at the time a legally registered voter as *herein prescribed."* Section 2 prescribes the only qualifications but one necessary to become a registered voter referred to in section 3. These are residence in the State for two years, in the county six months, and in the election district four months, preceding the election. Section 4 adds the other, an educational qualification. There is of course the well known disqualification for crime. Thus the man who registers becomes, in the language of the Constitution, a

"registered voter." He may exercise the right or not as inclination or duty may prompt him. But before he can exercise it he is required by section 4 to pay his poll tax for the previous year and such payment must be made on or before May 1 of the year in which he proposes to vote. When the Legislature used the words "registered voter" it used them in the sense in which they are employed in the Constitution and as previously defined by the courts. This is an elementary principle of the construction of statutes. This court as long ago as 1875 has made a broad distinction between a registered voter and a qualified voter, and that distinction has been generally recognized both by the General Assembly and the judiciary. *Mr. Justice Rodman,* speaking for a unanimous court, says: "A qualified voter is one who is entitled to register as a voter, and who is also qualified to vote after such registration." *Railroad v. Caldwell,* 72 N. C., 493. Again he says in the same opinion: "But in the idea of the Constitution the terms qualified voters and registered voters are not exactly co-extensive." See also *Norment v. Charlotte,* 85 N. C., 389. Having shown that the right to become a "registered voter" is a distinctive right given by the Constitution, and so recognized by the courts, the Legislature is presumed to have used the term in the significance so given it. The right to become a registered voter ante-dates the time fixed for the payment of poll tax, and, therefore, it follows that a registered voter, within the plain meaning of the Constitution, is one who has registered, but has not paid his poll tax. When he does the latter, he becomes a fully qualified voter. If the General Assembly had intended that only qualified voters should sign the petition it would have used those words and not the term *"registered voters."* It had the same power to require one as the other as a condition precedent to holding the election. With perfect deference for my brethren, it seems plain to me that they have by judicial construction read into the statute words which the

PACE *v.* RALEIGH.

General Assembly never intended to place there. Inasmuch as the disability arising from not having paid poll tax post-dates registration in all cases, it is evidently regarded in the Constitution and statute as a temporary disability to vote and not as a barrier to becoming a registered voter. The failure to pay this tax does not authorize the erasure of the delinquent's name from the registry of voters. It only disables him to vote at the succeeding election. When he registers he is made a registered voter by force of the Constitution. He may fail to pay poll tax for ten years and then exercise his right to vote by the payment of poll tax for one year only. But ordinarily and with unchanged conditions he is not required to register but once. The failure to pay the tax does not affect in any way his status as a registered voter. So that when the law says one-third of the registered voters for the preceding municipal election, it does not mean registered voters who might not be free to vote at a present *election* from failure to have paid poll tax by the first of the preceding May, but it means all whose names are upon the registration books as standing, permanent voters, that is, all who are potential voters.

I have not reviewed the authorities cited in defendant's brief because they are not noticed in the opinion of the court and have, in my judgment, no application to the point under discussion, for the reason that we are now considering the law which prescribes qualifications for *petitioners* for an election, and not qualifications of *voters* at an election.

2. We were invited by counsel on both sides to scrutinize this record with care. I have done so, and in the investigation of the case another reason, not mentioned in argument or brief, has occurred to me which greatly strengthens my conviction that the General Assembly used the words "registered voters" advisedly and in the sense they have always been used. That is, because the statute fails to give to the city authorities any power to determine who has not paid poll

tax and fails to declare how the fact shall be proven and what evidence is necessary. It provides no machinery for this purpose. Whether a man is a registered voter can be easily determined by a simple inspection of the registration books. Whether or not he has paid his poll tax cannot be determined by an inspection of the tax books. If that were allowed, the sheriff or tax collector could temporarily disfranchise any one by failing to enter the payment. The Legislature of 1901 was not willing to place the registered voter in the power of the tax collector, and so under the general election law enacted at that term the tax lists constitute no evidence whatever. They are utterly incompetent to prove anything. The entries of payment are *ex parte*. The voter has no control over them and they are not evidence against him upon the fact of payment. There is no law that I can find that requires the sheriff to make the entry of payment of taxes upon the lists. Such entry is his own act, for his own convenience, and is not a public record. *Noble v. Douglas,* 56 Kansas, 92.

The Act of 1901 provides that it shall be the duty of every sheriff and tax collector, between the 1st and 10th days of May, 1902, and biennially thereafter, to certify under oath a true and correct list of all persons who have paid their poll tax for the previous year on or before the first day of May, to the clerk of the Superior Court, who shall, within ten days, record the same in a book to be provided for that purpose, keeping each township separate, and certify a true copy thereof to the chairman of the board of elections for such county. This evidently for information for purposes of challenge. If it were permissible to refer to the tax books to determine who has paid poll tax, this certified list would be the best evidence of that fact, and not the sheriff's entries on the books. This list is the evidence provided for the board of elections, but it is not made evidence against the voter. The record in this case shows that the committee of the board of aldermen, appointed for the purpose of determining who had paid poll

tax, referred only to the sheriff's tax books and accepted the entries there as conclusive evidence.

If the construction of the statute adopted by the majority of the court is the true one, and it was the intention of the Legislature that the words "registered voter," plain and unequivocal as they are, should mean "qualified voter," is it not strange that the governing bodies of cities and towns are given the naked power, necessarily implied under the court's construction, to determine who are qualified voters, and left without a vestige of machinery for such determination? Is it that the true qualifications of a voter are to be left for determination to the uncertain judgment of a board of aldermen to be allowed or denied in the absence of the voter and without the right to be heard? The statute does not suggest any means of determining who are and who are not qualified voters. It is silent as to the tax books. Where, then, is the authority to consult the sheriff's office for guidance; where is the right to accept the sheriff's entries or lack of entries as conclusive of the payment or non-payment of poll tax? It cannot be found in the statute. And yet, the logical result of the opinion of the court is to construe into the act this authority. Is such a construction reasonable? I answer this by again referring to the general election law, enacted by the Legislature of 1901 and considered and approved by the Legislature of 1903, to show an unwillingness on the part of the Legislature to leave the right of suffrage to any such control and to show the unusual care in providing machinery for the determination of the qualifications of a voter. Following the requirement that no person shall be entitled to vote unless he shall have paid his poll tax in accordance with the Constitution, the act provides: "Every person liable for such poll tax shall, before being allowed to vote, exhibit to the registrar his poll tax receipt for the previous year, issued under the hand of the sheriff or tax collector of the county or township where he then resided: Provided, that in lieu of such poll tax

receipt it shall be competent for the registrar and judges of election to allow such person to vote upon his taking and subscribing the following oath: 'North Carolina, . . . . . . County. I do solemnly swear (or affirm) that on or before the first day of May, of this year, I paid my poll tax for the previous year, as required by Article VI, section 4, of the Constitution of North Carolina.' "

In enacting this provision the Legislature recognized that the exercise of the right of suffrage should be favored and not discouraged, and that the method of determining the existence of the right should be simple. It is true that the determination of the board of aldermen as to the payment of poll tax by the signers of the petition does not involve the right to vote, but only the right to call an election. But it matters not that the right to vote is not directly involved. The right to petition is a legal right conferred by the act and this court says depends upon the right to cast a vote. Under the court's construction of the statute a resident of the city of Raleigh, or of any other city, although a registered and qualified voter, may be denied a voice in calling an election, because the board of aldermen in an *ex parte* proceeding, when he is not present, with no evidence before it save the tax list of the sheriff, may find that he is not a qualified voter.

A supposed state of facts will show the injustice of the court's construction. A has signed the petition for an election; the sheriff's tax list does not show that he has paid his poll tax; the board of aldermen on such negative and incompetent evidence erase his name from the petition; on the day of election he presents his tax receipt, or makes oath that he has paid his poll tax, and votes at the election which he was denied the right to call. In this case the voter is refused the right of petitioning for a municipal election in which he has the right to vote.

As a further evidence of the importance of this machinery for determining the qualifications of a voter, it is provided by

the general election law that the failure of the sheriff to give a
tax receipt is a misdemeanor, and he is required upon appli-
cation and affidavit of the applicant that his receipt has been
lost to provide a duplicate receipt. The act, however, pro-
vides no penalty for a mistake in the list of persons who have
paid their poll tax, and does not even require the entry to be
made on the tax books, other than the list to be furnished the
clerk of the court, which was not referred to by the board of
aldermen in this case. That the tax books are subject to mis-
takes cannot be doubted. Is the voter then to be given no op-
portunity to correct such mistake, or make oath to the pay-
ment of his poll tax and be entitled thereby to sign the peti-
tion? It seems to me to be a strained construction of the
legislative intention to hold that in the face of the specific
machinery of the general election law for determining the
qualification of a voter, they should empower the governing
bodies of towns and cities to adopt any method they should
see fit to adopt to determine so important a matter. Is the
voter, whose right to sign the petition is attacked, given the
right by the terms of the statute, either express or implied,
to be present when the matter is considered? Is he entitled
to any hearing? Is he entitled to notice? Can he present
his tax receipt or make oath that he has paid his poll tax?
Can he show that he is exempt from poll tax? The statute
gives no such rights. Then I must assume that these rights
are denied him, and this assumption is supported by the facts
in this case. The report of the committee of the board of
aldermen of the city of Raleigh, in explaining the method
pursued in determining the qualification of the signers of
the petition, says: "We examined the tax book of the sheriff
of Wake County for the year 1904, and found that two hun-
dred and sixty-six (266) persons whose names are on the
registration books failed to pay their poll taxes for the year
1904 on or before May 1, 1905; of these 266 names we find
113 on the petition of persons whose names are on the regis-

tration books who failed to pay their poll taxes for the year 1904 on or before May 1, 1905."

Is their conclusion justified? They say they examined the tax books only. They made such examination in the absence of the voter, and yet on this sort of incompetent evidence they conclude that the poll tax has not been paid and deny *registered voters* the right to petition for an election. Has the right of suffrage so far lost its sanctity that its exercise can be made dependent upon conclusions drawn from such evidence? Books, possibly incorrect, a committee, possibly mistaken, and from this the conclusion is drawn that 113 petitioners, all of whom are absent, have failed to pay their poll tax. And this unwarranted method is endorsed by this court because Mr. Webster defines a voter to be, "One who votes, who is entitled to vote." It appears to me that this is a forced construction and that it could not have been the intention of the Legislature to empower a board of aldermen to determine in an *ex parte* proceeding the qualifications of one offering himself as a voter, when the general election law was so solicitous in protecting the registered voter's right to prove his qualification.

That the construction of a statute should be reasonable is familiar learning. That it should be construed in the light of existing legislation on the same subject is also well settled. What is a reasonable construction of the statute before us? The Legislature intended to provide a simple, convenient and cheap method of petitioning and calling an election. A petition of a specified number of *citizens* was open to the objection that women and children, who are citizens in the broadest sense of the word, might sign it; a specific number of *qualified voters* was inconvenient because, as I have pointed out, it would involve a cumbersome and tedious method of determining who are qualified voters. The Legislature met these objections by adopting the only alternative, the *registered voter,* and provided that an election must be called

"upon the petition of one-third (1-3) of the registered voters of any city or town." They did not use the word "voters" alone, because it is co-extensive with qualified voters, and because it means, as the court defines it, "One who votes, one who is entitled to vote," and there would be difficulty in determining this question; but they qualified it with the word "registered," thereby intending that the registration books containing the names of the existing registered voters should be final in determining the number of citizens having the right to sign a petition.

3. Assuming that the board has the implied power to determine who have not paid the poll tax, I am convinced that, without any wrongful purpose on their part, they have mistakenly exercised such power in an illegal manner. Although this point was not argued before us, it arises upon the complaint for *mandamus*. Omitting the voluminous exhibits attached to the complaint, it is short and simple, and alleges that the board wrongfully refused to count 113 names rightfully on the petition. It is the duty of the court to consider any view of the law wherein the board may have erred in refusing to count those names. In *Scott v. Life Asso.,* 137 N. C., 521, this court based its judgment solely upon a view of the law not mentioned in the record, and upon entirely different grounds than those assigned in argument. In the first place I incline to the opinion that the board had no right to delegate its authority to a committee of two to pass on the fact of payment of poll tax. It is the exercise of practically a judicial function and the board should have passed upon the matter themselves by a majority in regular session. In the second place, if the board has this implied power, in its exercise they should pursue the method pointed out in the election law. The voter's right to petition being a statutory right, and in the opinion of the court dependent upon his right to vote, should be passed upon in the same manner as his right to vote. The board should have sum-

moned the 113 petitioners before them and called upon each to produce his tax receipt, or have given him the opportunity to take the oath I have quoted. It is not admitted in the complaint that these 113 citizens and registered voters or any of them have not paid their poll tax, and this plaintiff would have no right to make any such admission for them. Each petitioner has the personal right to have notice, be present and be heard when his individual right to sign the petition is contested upon such ground, as much so as when his right to vote is challenged at the polls on election day upon the same ground. Then he is present and is heard in defense of his legal rights. Such just and reasonable right has been denied by the defendant in this case to each of the 113 petitioners whose names were arbitrarily stricken from the petition. The court, in its opinion, says: "If it be conceded that the board of aldermen had no right to purge the registration lists, then clearly the *mandamus* could not issue, for the petition did not contain one-third of the names upon the registration list." This of course could only be true if the names of those who had not paid the poll tax are added to the registration lists, and those names on the petition who had not paid poll tax were not restored to the petition. If we restore the names to one, we must restore them to the other. It was admitted below, conceded here, and is expressly found by *Judge Justice* and acquiesced in by all, that if non-payment of poll tax was not a disqualification, then the necessary one-third of the voters had signed the petition. The count stands thus:

Original registration.........................1,826
Dead and removed............................. 258

Registered voters.............................1,568
Necessary one-third........................... 523

On petition...................................... 543
Names taken off by request...................... 22
                                                 ────
                                                 521
Names added by request......................... 13
                                                 534
                                                 ────
Excess on petition over one-third of registered voters... 11

The above is the true estimate of those who are reported not to have paid poll tax and who are registered and on the petition. If they are excluded, then the petition lacks 16 of having one-third of registered voters.

In view of the report of the committee as to the examination of the tax lists, I am at a loss to understand the statement in the opinion that it does not appear that the tax list was the sole evidence before them. That is the plain statement in the report of the committee—*expressio unius est exclusio alterius.*

No one disputes the right of the board to purge the registration books of the dead and removed, but payment of poll tax not being a necessary qualification to register, the board has no right to purge the registration books of registered voters who are alleged not to have paid poll tax. Registrars and poll holders themselves cannot do that. How can it be logically said that a voter's name can be practically stricken from the registration books for the lack of a qualification not required to put it there?

In behalf of these 113 private citizens, whose legal rights have been denied them, and who have practically been declared disfranchised without notice, hearing or competent evidence, I enter my respectful dissent to the opinion and judgment of the majority of the court in this case.

I am authorized to say that *Mr. Justice Walker* concurs in this dissent.