STATE EX REL. J. P. ECHERD v. C. G. VIELE.

(Filed 10 December, 1913.)

1. Quo Warranto—Attorney-General—Consent—Trials—Correspondence—Evidence—Questions for Court.

A letter received, in due course of mail, from the addressee in reply to a letter mailed to him, is *prima facie* evidence, without further proof, of the genuineness of the letter so received; and where a relator, through his attorney, in *quo warranto*, has mailed a letter to the Attorney-General for authority to bring the action, a letter received by mail in reply, apparently from the Attorney-General, granting the request, is evidence sufficient that such consent had been duly obtained, and presents a question of fact for the court.

2. Quo Warranto — Election — Returns — Trials—Evidence—Prima Facie Case.

In an action of *quo warranto*, impeaching the result of an election to the office contested, the return of the poll-holders of the result is *prima facie* evidence of its correctness.

3. Elections—Quo Warranto—Electors—Qualification—Registration —Poll Tax—Interpretation of Statutes.

In an action of *quo warranto* in which the title to a municipal office depends upon the result of an election held therein, it is competent to show that certain votes for the relator were cast by persons disqualified by nonresidence, and that others cast against him were by persons who were ineligible for nonpayment of poll tax, required for valid registration by Revisal, sec. 2949, though these voters had been admitted to registration after challenge.

4. *Quære:* Whether the General Assembly must require the same qualifications for municipal suffrage as for electors in State and county elections.

APPEAL by defendant from *Cline, J.,* at Fall Term, 1913, of ALEXANDER.

*A. C. Payne for plaintiff.*

*J. H. Burke and L. C. Caldwell for defendant.*

CLARK, C. J. This is a *quo warranto* for the office of mayor of the town of Taylorsville.

The first exception is to the admission of the paper purporting to be authority given by the Attorney-General to the re-

lator to bring this action, and purports to be signed by the Attorney-General. The relator by his attorney placed in the post-office at Taylorsville a letter addressed to the Attorney-General of the State, asking for permission to bring this action, together with the requisite bond, and received in due course of mail the permit with what purported to be the signature of that officer attached. Though he does not testify that the signature is genuine, he testifies to the above facts. In *McConkey v. Gaylord,* 46 N. C., 94, it is held: "A letter received in due course of mail purporting to be written by a person in answer to another letter proved to have been sent him is *prima facie* genuine, and is admissible in evidence without proof of the handwriting or other proof of its authenticity." There being no evidence to the contrary, the court properly admitted the paper. There was not properly an issue for the jury. But they have found that the permit was genuine. It was a "question of fact" for the determination of the court. There is no error, however, as the court by its judgment adopted the finding of the jury.

The returns of the poll-holders showed 49 votes cast for the relator and 51 for the defendant. This action is brought to impeach this result, which is *prima facie* correct.

It was shown that 1 vote cast for the relator was by a party living outside of the town limits. This was properly disallowed, leaving 48 votes for the relator. The relator was permitted to prove that a certain number of voters, more than enough to change the result, though registered, had not paid their poll tax for the year ending 1 May, 1913, the election having taken place 6 May, 1913, and he showed by these voters and others that the ballots of the parties named who were between 21 and 50 years of age and had not paid their poll tax were cast for the defendant, and were allowed to vote, though challenged.

The defendant excepted (1) That the plaintiff was allowed to show how these parties voted. This exception does not require discussion. (2) That the Constitution does not require that voters in a municipal election shall be qualified voters of

the State and county, nor is this required by any statute, and hence it was not necessary that these voters should have paid the poll tax.

It is not necessary to the decision of this case to pass on the power of the General Assembly to require different qualifications for electors in municipal elections from those required in State and county elections,. and the question is too important to be decided without the most careful consideration. In point of fact, the General Assembly has prescribed for city and county elections the following:

"Rev., 2949. *Registration of voters.* It shall be the duty of the board of commissioners of every city and town to cause a registration to be made of all the qualified voters residing therein, under the *rules and regulations* prescribed for the registration of *voters for general elections.*"

From this it will be seen that the General Assembly has prescribed for municipal suffrage the same rules and regulations as for voters for general elections, and that under the statute voters at municipal elections must have the same qualifications as are required in general elections, *i. e.,* in elections for State and county. Among these qualifications is the payment of the poll tax.

The defendant further contends that the voters having been registered, it is not competent to show that they were not qualified voters. This point was discussed and settled in *Pace v. Raleigh,* 140 N. C., 65, in which it was held that where it was required that a petition should be signed by "one-third of the registered voters therein who were registered for the preceding municipal election to order an election," only those persons were entitled to sign the petition who, besides being lawfully registered, also possessed the necessary qualification of having paid the poll tax (if liable to poll tax). If, notwithstanding being registered, it could be inquired into upon the petition for an election whether they were qualified to register, it follows that upon an inquiry as to the true result of an election, it can be ascertained whether voters, notwithstanding their being registered, were qualified to register.

·In *Pace v. Raleigh, supra,* the Court said that each person must not only be a *"registered* voter," but also "a registered *voter."*

The jury having found that a sufficient number of the registered voters to change the result had cast their ballots for the defendant, who had not paid the poll tax, though liable to such tax, 1 May, 1913, it is unnecessary to consider the other exceptions.

The verdict of the jury in favor of the relator and the judgment thereon in his favor must be sustained.

No error.